Arthur P. Fledderman, Petitioner *v.* Workmen's Compensation Appeal Board (Stackpole Carbon Corporation), Respondents.

Argued October 10, 1985, before Judges MacPhail and Doyle, and Senior Judge Barbieri, sitting as a panel of three.

*John R. Fernan, Cartwright, Fernan & Whitney,* for petitioner.

*Robert L. Saunders, Mutzabaugh, Mutzabaugh, Saunders & Mattie,* for respondent, Stackpole Carbon Corporation.

Opinion by Senior Judge Barbieri, November 14, 1985:

Arthur P. Fledderman (Claimant), appeals here an order of the Pennsylvania Workmen's Compensation Appeal Board (Board) which reversed a referee's award of total disability benefits for the period August 2, 1982, when Claimant was permitted to bid for a light duty post, until October 21, 1982, when Claimant returned to work at his regular occupation. We will reverse.

Claimant, employed as a carpenter for some 30 years in the employ of Stackpole Carbon Corporation, suffered an injury on June 17, 1981 from which he recovered and returned to full employment in his regular trade and position on October 21, 1982. Although

Claimant was physically able before October 21, 1982 to do lighter work for the employer in a job for which he had an opportunity to bid, Claimant declined to bid for the post because of the harsh effect on his career that would be visited upon him by virtue of a union contract which was binding on him. The referee's observations concerning this are pertinent, as follows:

> . . . The claimant was familiar with the job in question, and felt that he would be unable to perform the job because the job required long periods of standing, repeated bending over a table, and at times lifting over 25 pounds.

> Considering all of the testimony as to the activities required of the job in question, your Referee is of the opinion that the job offered for bid was light work within the limitations imposed by the claimant's treating and examining physician.

> It would appear to your Referee that the claimant had more important reasons for refusing to bid on this job. The claimant was a carpenter and was classified as a skilled laborer. To achieve this classification, it required serving a four-year apprenticeship. The claimant had worked at this job for over 30 years. Under the Collective Bargaining Agreement with the defendant company if the claimant were to bid on the job which was offered, he would have lost all of his seniority and job status as a carpenter. If successful in his bid for the new job, the claimant would be starting out as a new laborer with no seniority whatsoever. In addition, there was no assurance or proof that the claimant would have been successful in his bid and been given the job even if he would have bid on the job.

The referee then made two findings which the Board found to be inconsistent, as follows:

. . . .

5. That your Referee finds as a fact that the defendant did make a special job available to the claimant on August 2, 1982, which the claimant could have physically performed within the limitations imposed by the examining and treating physician.

. . . .

7. That under the circumstances known to the defendant and the claimant at the time of the job offer on August 2, 1982, your Referee finds as a fact that the defendant failed to establish that there was a job available to this claimant.

We respectfully disagree with the Board's characterization of these two findings, since we read them simply as the referee's factual conclusions that Claimant had the physical capacity to perform the job open to bid, but under his Collective Bargaining Agreement and in the interest of preserving his status after a life-long career, it was not a valid offer of employment, since the penalties for acceptance rendered it unacceptable. In light of this inevitable interpretation, we must concur with the referee's decision.

Furthermore, as the referee noted, the employer here did not declare the job open to the Claimant, but only invited him to bid for it. This could hardly be characterized as a job available and rejected by Claimant.

Our view of the referee's findings is further substantiated by another of his observations, as follows:

Your Referee does not hesitate to find that the job up for bid in this case was not a 'job available to this claimant' on August 2, 1982. This

employee had worked almost a lifetime for this defendant and was a good, loyal employee. Certainly this claimant was not trying to take advantage of this injury in order to obtain a prolonged period of time off with pay under Workers' Compensation. The facts are that this claimant did return to his regular job on October 21, 1982, and has been working steady since that time.

The claimant returned to work on October 21, 1982 at his carpenter's job, earning wages greater than those he was earning at the time of his injury.

Finally, there is the referee's observation to the effect that Claimant at the time of the bid offer was progressing toward recovery and looking forward to the return to his regular employment as a carpenter. This observation is as follows:

> Sometime after August 2, 1982, P.M.A. contacted the claimant notifying him that the job was available for bid, however the claimant did not bid on the job. The claimant called Mr. McAllister at the defendant's office and advised him that he had a doctor's appointment in the near future, and felt the doctor would release him to return to his regular job as a carpenter.

It is our conclusion that there was no lack of good faith in Claimant's refusal to bid for the unacceptable post and that it was properly declared to be an unavailable job for this Claimant in light of the penalties attendant upon its acceptance by him. As pointed out by Claimant's attorney in his brief, the forfeiture of Claimant's standing in his post which he was able to assume just 11 weeks later, may have doomed him to lose not only his career trade, but the loss of $3.00 per hour. In conclusion, we have no hesitation in

holding that such hardships and penalties as would be visited upon Claimant if he accepted the lower paying job for the 11 weeks involved render the holding by the Board that this was a "job available" to Claimant a clear error as a matter of law quite aside from the Board's additional error of interpreting facts differently from the referee without holding a separate hearing. *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board (Krawczynski)*, 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973). Accordingly, we will reverse.[1]

ORDER

Now, November 14, 1985, the order of the Workmen's Compensation Appeal Board, at No. A-85862, is hereby reversed; and the referee's decision and order dated March 16, 1983, is hereby reinstated.

---

[1] In any event, it was clear error for the Board to order a termination as of August 2, 1982, the date of the bid offer, since the job offered would have paid $6.47 per hour whereas claimant's regular employment was compensated at the rate of $9.63 per hour, so that even if the job were "available" to Claimant, the record would not support a termination, but only a reduction to two-thirds of the difference weekly which would represent the loss of earning power due to the partial disability. Section 306(b), The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §512.