633 A.2d 128

**ST. JOE CONTAINER COMPANY, Appellant,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (STAROSCHUCK), Appellee.**

Supreme Court of Pennsylvania.

Submitted March 8, 1993.

Decided Nov. 1, 1993.

Reargument Denied Dec. 27, 1993.

J. Eric Barchiesi, Baginski & Bashline, Pittsburgh, for appellant.

Robert X. Medonis, Pittsburgh, for Andrew Staroschuck.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

CAPPY [1], Justice.

In this appeal we must determine whether alternative non-union employment offered by Employer, and capable of being performed by Claimant, was nevertheless "unavailable" because it required a forfeiture of seniority, security and associated benefits achieved through 36 years of prior unionized service with Employer, thus rendering Claimant's refusal of such employment reasonable and insufficient to support modification of compensation to reflect partial disability.[2] For the reasons stated herein, we affirm the decision of the Commonwealth Court, affirming the decision of the Workmen's Compensation Appeal Board, which reversed the decision of the Referee to the extent that it modified Claimant's compensation to reflect partial disability beyond six months from the date of Employer's petition.

On January 10, 1983, Andrew Staroschuck ("Claimant"), a unionized machine operator employed by St. Joe Container Co. ("Employer"), suffered a work-related injury to his lower back, and began receiving compensation reflecting total disability. On April 25, 1986, Employer offered Claimant a newly created *non-union* salaried position as a shipping clerk, which claimant was capable of performing with his physical limitations. Claimant refused this offer of employment because, as a member of the union representing the employees

1. This Opinion was reassigned to this writer.
2. Pursuant to 77 P.S. § 772:

A referee designated by the department may, at any time, **modify,** reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its referee, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed....

As a practical matter, this provision provides, *inter alia,* for a modification/reduction of benefits if an employer satisfies its burden of establishing a claimant's recovery of some or all of his ability to work, as evidenced by the actual availability of acceptable alternative employment capable of being performed by the claimant, without regard to actual physical change in claimant's disability.

at the Employer's plant, he had attained seniority, security and associated benefits, which would be forfeited if he were to work in a non-union capacity in excess of six months. Employer offered to return Claimant to union status without adverse effect if Claimant was dissatisfied after six months as a shipping clerk, and Claimant continued to refuse the non-union position.

On May 9, 1986, Employer filed a Petition for Modification of Compensation with the Bureau of Workers' Compensation, requesting modification as of May 1, 1986, on the grounds that Claimant had refused Employer's offer of employment within his physical limitations. In answer to Employer's Petition, Claimant asserted that his continuing disability prevented his return to a manufacturing position, and the union contract prevented him from performing the shipping clerk position. The matter was assigned to a Referee who conducted hearings in the matter on August 25, 1986, and April 3, 1987.

By decision dated December 18, 1987, the Referee granted Employer's Petition for Modification of Compensation, and ordered Employer to reduce its payments to a level reflecting partial disability, the difference between wages Claimant formerly earned and those of a shipping clerk, as of May 1, 1986, and continuing into the future. The Referee specifically found that Claimant was capable of performing the shipping clerk position offered to him. The Referee further found that Claimant's refusal to accept the position was unreasonable, given Employer's offer of return to union status if Claimant was dissatisfied after six months, and the fact that the shipping clerk position would have provided Claimant with the same vacation benefits, a credit for past retirement benefits earned, and life and health benefits.

Claimant appealed to the Workmen's Compensation Appeal Board ("Board"), which reversed the decision of the Referee to the extent that it modified Claimant's compensation to reflect partial disability beyond six months from the date of Employer's petition. The Board determined that Claimant's refusal of the shipping clerk position necessitated partial

disability payments for a period of *only* six months, and that total disability payments should resume thereafter. The Board concluded that the shipping clerk position should be deemed available to Claimant for only six months because Claimant would have forever lost his union status if he occupied the position for a longer period of time. The loss of union status was viewed as an unacceptable penalty of accepting the non-union position, as it would cause a forfeiture of 36 years of seniority with its attendant benefits. Employer appealed to the Commonwealth Court, which affirmed the decision of the Board, 141 Pa.Commw. 672, 596 A.2d 1193 on the same basis and in reliance upon the general criteria for job availability established by this Court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), as expanded upon by the Commonwealth Court through its decision in *Fledderman v. Workmen's Compensation Appeal Board (Stackpole Carbon Corp.)*, 93 Pa.Commw. 44, 500 A.2d 215 (1985). Employer filed a Petition for Allowance of Appeal with this Court, which we granted.[3]

In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), this Court was presented with the general question of what circumstances would support a determination that alternative work was available to a claimant. Initially, this Court adopted the Commonwealth Court's interpretation of "available" as requiring a showing of actual availability, and then went on to state the following procedure as governing the return to work of injured employees:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

3. Our scope of review in this matter is limited to determining whether there has been a constitutional violation, or an error of law, or a violation of Board procedure, and whether the necessary findings of fact are supported by substantial evidence. 2 Pa.C.S.A. § 704; *Pieper v. Ametek–Thermox Instruments*, 526 Pa. 25, 584 A.2d 301 (1990).

2.  The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3.  The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4.  If the referral fails to result in a job then claimant's benefits should continue.

*Id.* at 252, 532 A.2d at 380.

Obviously, under a strict interpretation of these guidelines, given the evidence in the matter *sub judice* that Claimant was offered a job falling within the occupational category for which he was given medical clearance, it would appear that Employer had met its burden of showing that alternative employment was actually available to Claimant, and that his refusal thereof warranted a reduction of benefits. However, such a strict construction would ignore the broader issue presented herein, the scope of which lies beyond the general *Kachinski* inquiry of whether a claimant is capable of performing a job and has made reasonable efforts to obtain the job. Here we must determine whether the job is, in essence, unacceptable for some reason unrelated to the employee's physical abilities or his conduct in connection with a valid job referral, thus rendering it unavailable to the Claimant.

In requiring that certain specific circumstances exist in order for a job to be classified "actually available," this Court recognized in *Kachinski* that guidelines were necessary to protect "both the employees' interest in receiving the compensation due him, and the employer's interest in not being held responsible in excess of the injury caused." 516 Pa. at 251, 532 A.2d at 379. Unquestionably, the extent of a claimant's injury is a primary consideration governing whether certain alternative employment is actually available to a claimant. Given "the salutary purpose of workmen's compensation to provide relief due to injuries caused in the workplace," *id.*, and the ultimate goal of making the injured employee whole, we believe that the extent of the injury caused in the workplace

may reasonably include the loss of qualitative benefits associated with the claimant's former position under certain limited circumstances.

In the case *sub judice* Claimant argues that providing him alternative employment as a shipping clerk together with his remaining partial disability benefits will not make him whole. He submits that by accepting the alternative employment offered, his disability would result in not only the loss of his manufacturing position, but also the seniority, security and associated benefits of his union status. It is the loss of these union attributes, not provided by the shipping clerk position, which he argues is of sufficient penalty to render the shipping clerk position unacceptable, and thus, unavailable.

A similar argument was addressed by the Commonwealth Court in *Fledderman v. Workmen's Compensation Appeal Board (Stackpole Carbon Corp.)*, 93 Pa.Commw. 44, 500 A.2d 215 (1985), wherein that court determined that alternative employment was unacceptable in an instance where the claimant was physically capable of performing a position for which he had an opportunity to bid, but where the mere submission of a bid would work harsh effect on his career by virtue of a union contract which was binding on him. The claimant had worked as a carpenter for more than 30 years and was classified as a skilled laborer based upon completion of a four year apprenticeship. Pursuant to the Collective Bargaining Agreement with the employer, if the claimant were to bid on the job offering, he would have lost all seniority and job status as a carpenter, with no assurance of actual employment in the offered position. If successful, the claimant would have been classified as a new laborer with no seniority. In determining that the position was unavailable despite the claimant's physical capacity to perform the job open to bid, the court reasoned that "under his Collective Bargaining Agreement and in the interest of preserving his status after a life-long career, it was not a valid offer of employment, since the penalties for acceptance rendered it unacceptable." *Id.* at 47, 500 A.2d at 217.[4]

4. We note that the union contract involved in the matter *sub judice* was not introduced into evidence before the Referee. However, the testimo-

St. Joe argues that *Fledderman* is distinguishable from the matter *sub judice* on the basis that the job in that case was not, in essence, guaranteed to the claimant, and because the Claimant in this case would lose no vacation, retirement, health and life insurance benefits if he accepted the shipping clerk position. However, such an argument fails to dispute the existence of the harsh effect worked upon Claimant by the threatened forfeiture of seniority, security and other benefits associated with his lengthy union service. Moreover, it essentially asks this Court to recognize "degrees of harshness" with respect to the forfeiture of union status, with the hope that we will determine that the benefits of the non-union shipping clerk position comport with those acquired after lengthy unionized service in a manufacturing position. In this instance, such would be inappropriate, since under the facts of this case, the penalties associated with accepting the shipping clerk position are clearly not tantamount to the benefits and attributes provided by that position. As a member of the union for 36 years Claimant possessed the protection and benefits provided by the union contract, job security, seniority, time and a half pay for overtime, bidding rights for higher paying jobs, etc., together with the obvious intangible value arising from his length of service and union association. All other things being essentially equal, this is a clearly definable qualitative loss simply not recouped through acceptance of the shipping clerk position.

Therefore, we conclude that the forfeiture of such benefits renders the shipping clerk position unacceptable under Claimant's union contract and in the interest of preserving his status after a life-long career, and thus, unavailable for purposes of Employer's Petition to Modify Compensation. Accordingly, it was a clear error as a matter of law for the Referee to conclude that the shipping clerk position was a "job available" to Claimant to the extent that Claimant's acceptance thereof would result in the hardships and penalties

nial evidence was clearly sufficient to support the conclusion that Claimant would lose his union status after working six months in the shipping clerk position.

associated with the loss of union status. This conclusion, however, does not end our inquiry, since Claimant would not have been subjected to a forfeiture of such benefits by accepting the first six months of the shipping clerk position. The record is clear that Employer offered to return Claimant to union status without adverse effect if Claimant was dissatisfied after six months as a shipping clerk. Nevertheless, Claimant continued to refuse the non-union position.[5]

For these reasons, we hold that the position of shipping clerk was acceptable alternative employment available to Claimant for the six month period commencing May 1, 1986, and that upon expiration of this six month period the position of shipping clerk became unacceptable alternative employment unavailable to Claimant for purposes of Employer's Petition to Modify Compensation. As Claimant's refusal of the shipping clerk position would support a reduction of his benefits for only that period for which the position was available, his compensation was properly modified to reflect partial disability as of May 1, 1986. However, as of November 1, 1986, Claimant's refusal became reasonable, and such modification was improper and compensation reflecting total disability should have been resumed until such time as his circumstances changed.

5. We note that nothing contained in the record supports how Employer could, in essence, guarantee Claimant's return to union status after six months. If anything, the record supports the opposite conclusion. The Union President testified that the six month grace period applied only to supervisory positions and thus, the six month grace period was inapplicable and the mere acceptance of that position would work a termination of union status. (R.R. p. 117a). Moreover, Employer's representative, the General Manager of the plant, testified that he was unsure whether the six month grace period would apply to the shipping clerk position, and that it depended upon what the union would consider it. (R.R. p. 204a). Obviously, such testimony could reasonably support the conclusion that Employer had *also* failed to meet its burden of proof as to actual availability with respect to the initial six months, since it was, in essence, powerless to guarantee a return to union status after six months. However, we conclude that this makes little difference in the result in this case. Since Claimant has filed no cross-appeal and has simply requested that we affirm the decision of the Commonwealth Court, such evidence is, as a practical matter, unrebutted, consistent with Claimant's arguments, and accepted as being true.

Accordingly, we affirm the decision of the Commonwealth Court, affirming the decision of the Board, which reversed the decision of the Referee to the extent that it modified Claimant's compensation to reflect partial disability beyond six months from the date of Employer's petition.

FLAHERTY, J., files a dissenting opinion.

FLAHERTY, Justice, dissenting.

This is an appeal, by allowance, from an order of the Commonwealth Court which affirmed an order of the Workmen's Compensation Appeal Board (Board) modifying a decision of a referee in a compensation case where an employer sought to reduce the disability payments being made to an injured employee. The employer, St. Joe Paper Company (St. Joe), appellant herein, had been making payments for total disability to its employee, Andrew Staroschuck (claimant), as a result of a work-related incident in which claimant suffered a lower back strain.

Claimant began receiving disability payments in 1983. In 1986, St. Joe offered claimant a job as a shipping clerk, a newly created position that was designed to accommodate claimant's physical limitations. This was a salaried non-union position. Claimant refused the position on the basis that he did not wish to work in a non-union capacity. Having been a union member for thirty-six years, claimant had attained a high level of seniority. He ranked eleventh or twelfth on the plant seniority list. This seniority, and associated benefits, would have been forfeited if employment in a non-union capacity had been undertaken for longer than six months. Accordingly, St. Joe offered to allow claimant to try the new position for a period of six months, and, if he became dissatisfied, to return to the union. Claimant refused.

Subsequently, St. Joe filed a petition for modification of benefits, alleging that the job as a shipping clerk was within claimant's physical capabilities and that claimant's refusal to accept the job was improper. A hearing was held before a referee. The referee made findings that claimant was physi-

cally able to perform the proffered job and that claimant's refusal to accept the job was unreasonable. With regard to the unreasonableness of claimant's refusal, the referee noted that "claimant had up to six months to try the job, and that if it didn't work out, he could return to the hourly union workers with no effect on his union seniority, as well as the fact that the claimant would have received the same vacation benefits that he previously had, a credit for past retirement benefits earned, as well as the salaried life and health benefits." Accordingly, the referee granted the petition for modification of benefits and ordered St. Joe to reduce its payments to a level reflecting partial disability, so as to take into account the difference between wages claimant formerly earned and wages he would have earned as a shipping clerk.

An appeal was taken to the Board. The Board modified the referee's decision and ordered that partial disability payments be made for a period of just six months, with the proviso that, at the end of the six-month period, total disability payments would resume. The Board's rationale was that the job as a shipping clerk should be deemed available to claimant for only six months because claimant would have lost his union seniority if he occupied the job for a longer period. The loss of seniority was viewed as an unacceptable consequence of accepting the non-union job, since there would have been a forfeiture of certain benefits associated with union seniority status. These benefits included job security, time and a half pay for overtime, bidding rights for higher paying jobs, etc. The fact that claimant would, as a non-union employee, have continued to receive various other benefits was not given weight by the Board.

An appeal was taken to the Commonwealth Court, and the Board's decision was affirmed. I would reverse.

In *Kachinski v. Workmen's Compensation Appeal Board,* 516 Pa. 240, 532 A.2d 374 (1987), this Court set forth criteria governing the modification of disability benefits in cases where there has been an alleged failure by an employee to accept suitable work. We held that an "employer must ... produce evidence of a referral (or referrals) to a then open job (or

jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc." 516 Pa. at 252, 532 A.2d at 380. It is also required that the "referrals by the employer must be tailored to the claimant's abilities...." *Id.* Accord *Farkaly v. Workmen's Compensation Appeal Board,* 516 Pa. 256, 258–59, 532 A.2d 382, 383 (1987) (employer must prove that disabled claimant was referred to an employment position within his capabilities, i.e., a job within the category for which medical clearance was given).

Our decisions in *Kachinski* and *Farkaly* require that the job offered to a claimant be within the claimant's abilities, but there is no requirement set forth in those decisions that jobs offered to union members be union ones. Nor is there a basis for imposing such a requirement. The question of whether a job is within a claimant's abilities has no connection whatsoever with whether the job is a union one. Certainly, a union job may have certain benefits associated with it. Likewise, a non-union job may have its own set of benefits. The mere fact that the benefits are not identical, however, does not have bearing upon whether a given job is within a claimant's abilities.

Clearly, an employer has a justifiable interest in seeing that payments for total disability do not continue for claimants who are not in fact totally disabled. It was not the intent of the Workmen's Compensation Act, 77 P.S. § 1 et seq., to hold employers responsible in excess of the injuries actually caused. See *Kachinski,* 516 Pa. at 251, 532 A.2d at 379. To hold an employer responsible for paying compensation to a claimant who is capable of performing a job that has been proffered, where the claimant has refused to accept the job because of its non-union status, would expand the employer's liability in a manner not contemplated by the legislature.

The Workmen's Compensation Act contains no provision according a preferred status to union employment. If it were to become the policy in this Commonwealth that union members who are receiving disability payments must be offered

only union jobs, such a policy should emanate from the legislature rather than from the courts.

In the present case the referee made a finding, based upon an ample evidentiary record, that claimant was capable of performing a job as a shipping clerk. Accordingly, the referee ordered that claimant's disability benefits be reduced. The Board and the Commonwealth Court erred, however, in modifying the referee's decision to allow claimant's status as a union member to affect the period during which a reduced level of disability benefits were to be paid. The decision of the referee should, therefore, be reinstated.