William O'BRIEN, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 9, 2001.

Decided July 18, 2001.

Richard R. Di Stefano, Philadelphia, for petitioner.

Deborah A. Mosteller, Philadelphia, for respondent.

Before PELLEGRINI, Judge, LEADBETTER, Judge, and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

William O'Brien (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the workers' compensation judge (WCJ) modifying his disability benefits. The issue on appeal is whether the light-duty position offered by the City of Philadelphia (Employer) was "actually available" for the purpose of determining Employer's entitlement to modify Claimant's disability benefits, where payment of his pension benefits would be suspended during his "re-employment" with Employer in the offered position. We affirm.

The following relevant facts are undisputed. Claimant was employed as a firefighter in Employer's Fire Department since January 1969. On February 4, 1989, Claimant sustained a work-related injury to his left thigh and lower left leg and received regular wages in lieu of temporary total disability benefits until August 29, 1989 pursuant to a notice of compensation payable. Claimant then began receiving maximum total disability benefits in the amount of $399 based on his average weekly wage in excess of $598.50. In the supplemental agreement executed in March 1990, Employer acknowledged that Claimant's work injury should include a lumbar strain and an injury to his left hip. Claimant subsequently retired from the firefighter position and began receiving pension benefits in the amount of approximately $20,000 a year, in addition to the maximum total disability benefits.

On March 28, 1997, Employer filed a petition to modify Claimant's disability benefits as of January 27, 1997, alleging that he refused to accept an available light-duty position within his physical capacity offered by Employer. At hearings before the WCJ, Employer presented the following testimony to support its petition.

Employer's medical witness, William F. Bonner, M.D., who is board-certified in physical medicine and rehabilitation, examined Claimant on August 1, 1996 and reviewed his medical record. Dr. Bonner thereafter released Claimant to return to full-time light-duty work with restrictions of lifting no more than twenty pounds, occasional bending, squatting and climbing, and changing his seated position at will. Based on Dr. Bonner's physical capacities assessment, Employer's rehabilitation counselor located a fire communications dispatcher position (dispatcher position) in Employer's Fire Department. After reviewing the written job description of the dispatcher position and personally viewing the position actually being performed, Dr. Bonner approved the position as within Claimant's physical limitations. By a letter dated December 6, 1996, Employer's rehabilitation counselor then notified Claimant that the dispatcher position within his physical capacity was available.

When Claimant appeared for the scheduled job interview on January 17, 1997, the Fire Department's assistant personnel officer explained the job duties of the dispatcher position to Claimant. Claimant was also informed that his starting salary would be $22,386 a year; he would also receive a longevity payment of $1225 for his previous employment as the firefighter and various fringe benefits; the pension payment he was receiving from Employer would be "frozen" during his "re-employment"; and upon his "re-retirement" from the dispatcher position, his suspended pension payment would be reinstated; and he would also earn additional pension benefits during his re-employment. After the job interview, Employer offered Claimant the dispatcher position. Claimant did not report to work on January 27, 1997, the scheduled first day of work. The surveillance videotapes presented by Employer showed Claimant's daily activities, such as walking, driving, carrying bags, opening a garage door and taking out trash.

Employer also presented the "global" deposition testimony of James Kidwell, its pension program administrator, taken for the purpose of this proceeding and other workers' compensation proceedings. Kidwell testified:

Q. Now, assuming an individual who is collecting a police or fire retirement pension under the '67 Plan is rehired by the City into a municipal position, what would happen to their retirement benefit?

A. A police or fire officer who is receiving a service retirement benefit and is subsequently rehired by the City in a municipal position, pension benefits would be suspended during their period of reemployment, and their new position, they would be enrolled in Pension Plan J.

. . . .

Q. What would happen to the benefits they earned while a member of the J. Plan?

. . . .

A. The retired police or fire officer who returns to a civilian position, their J Benefit accumulates while they're employed in the civilian position. At a future date if they separate from City service, we do a new pension calculation. . . . . It's actually three calculations. One, we determine what they were receiving on a pension when they retired as a fire or police officer. We compute what their J Benefit would be based on their length of reemployment in J. If they stay less than three years, but more than one year, we will do two calculations. We will do a J Benefit calculation based on their service less than three years, more than one, compute that benefit, add it to their police or fire benefit that they were receiving. . . . .

If they're reemployed for more than three years, we would do a new J Benefit calculation based on their total credited pension service which would take into account their prior years of pension service in the uniform division, add it to the J. time, do a new J calculation. If that calculation was higher than their previous pension benefit as a retired police officer or fire fighter, we would pay that benefit.

September 4, 1997 Deposition of James Kidwell, pp. 23, 25–26. On cross-examination, Kidwell reiterated that "under no circumstances will [Claimant's] benefits be less than what he was originally receiving." *Id.* at 60. When the retired firefighters are subsequently employed by other employers, however, they will continue to receive pension benefits from Employer, according to Kidwell.

In opposition to Employer's petition, Claimant testified that he refused to accept the dispatcher position offered by Employer because he was still experiencing pain and "would lose certain amount of money overall, with what [he was] getting with the pension." February 5, 1999 Hearing, N.T., p. 20. In responding to the WCJ's question, Claimant further stated:

Q. It seems from where I am sitting that that would be the best of all worlds. It is actually costing you money to sit home. Why aren't you out there doing something? Anything not involving the City of Philadelphia?

A. I had asked about certain positions basically as a watchman or something at one time, but I never really followed up on it.

February 5, 1999 Hearing, N.T., p. 21.

Accepting the testimony of Employer's witnesses as credible, the WCJ found that Claimant refused in bad faith to accept the available dispatcher position within his physical and vocational capacity. The WCJ further found that while the pension payment would be suspended during Claimant's re-employment as a dispatcher, the amount of his overall pension benefits would be actually increased upon his re-retirement from that position, and that by accepting the offered position, Claimant would only lose the "double payment" of his pension benefits and total disability benefits. WCJ's Decision, p. 10. The WCJ accordingly modified Claimant's total disability benefits to partial disability benefits as of January 27, 1997 based on the difference of the average weekly wages of the pre-injury position and the dispatcher position to be paid for a maximum of 500 weeks. On appeal, the Board affirmed the WCJ's decision. Claimant's appeal to this Court followed.

■■■ An employer seeking to modify a claimant's disability benefit on the basis that he or she has recovered some or all of the ability to work must first produce (1) medical evidence of a change in the claimant's condition and (2) evidence of a referral to a then open job within the occupational category, for which the claimant has been given medical clearance. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). To meet the second prong of the above test, the employer must demonstrate that the referred position was "actually available" to the claimant. *Id.* Once the employer meets its burden, the claimant must establish that he or she has in good faith followed through on all valid job referrals within his or her medical restrictions. *Id.*

On appeal, Claimant does not challenge the WCJ's findings that he was capable of performing the duties of the light-duty dispatcher position offered by Employer and approved by Dr. Bonner and that the dispatcher position actually existed in the Fire Department. Claimant contends, however, that the dispatcher position cannot be considered "actually available" because he would lose his pension benefits upon his return to work in that position.[1]

To support his contention, Claimant relies on *St. Joe Container Co. v. Workmen's Compensation Appeal Board (Staroschuck)*, 534 Pa. 347, 633 A.2d 128 (1993). In *St. Joe*, the claimant sustained the work-related injury while employed as a unionized machine operator and began re-

---

1. This Court's scope of review in a workers' compensation case is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether con-stitutional rights were violated. *Lenzner Coach Lines v. Workmen's Compensation Appeal Board (Nymick)*, 158 Pa.Cmwlth. 582, 632 A.2d 947 (1993).

ceiving total disability benefits. Three years later, the employer offered the claimant a newly created light-duty shipping clerk position, a non-union position. The claimant refused to accept the position, stating, *inter alia*, that he would forfeit his seniority, job security and associated benefits obtained as the union member for thirty-six years, if he were to work in a non-union capacity for more than six months.

In holding that the offered non-union position was not "actually available" after the first six-month period, during which the claimant could return to the union status, the Pennsylvania Supreme Court stated:

> As a member of the union for 36 years Claimant possessed the protection and benefits provided by the union contract, job security, seniority, time and a half pay for overtime, bidding rights for higher paying jobs, etc., together with the obvious intangible value arising from his length of service and union association. All other things being essentially equal, this is a clearly *definable qualitative loss* simply not recouped through acceptance of the shipping clerk position.
>
> Therefore, we conclude that the forfeiture of such benefits renders the shipping clerk position unacceptable under Claimant's union contract and in the interest of preserving his status after a life-long career, and thus, unavailable for purposes of Employer's Petition to Modify Compensation.

*Id.* at 354, 633 A.2d at 131 (emphasis added).

This Court subsequently followed the Supreme Court's holding in *St. Joe* and held that the non-union light-duty position offered by the employer was not available for the purpose of determining the employer's entitlement to modify the claimant's disability benefits, where the claimant, by accepting the non-union position, would lose the previously earned union benefits, such as the union guaranteed job security, the access to grievance process and the right to strike. *See ABF Freight Systems, Inc. v. Workers' Compensation Appeal Board (Iten)*, 744 A.2d 348 (Pa.Cmwlth. 2000); *Interstate Container Corp. v. Workers' Compensation Appeal Board (Keim)*, 710 A.2d 1249 (Pa.Cmwlth.1998).

■ After reviewing *St. Joe* and its progeny, we conclude that those cases are clearly distinguishable and do not support Claimant's contention that the offered dispatcher position was not actually available. Unlike those cases, the dispatcher position offered by Employer is a unionized position. Further, Claimant *had retired* from the firefighter position and was receiving pension benefits when Employer offered him the dispatcher position.[2] As the retir-

---

**2.** In *Camp v. Workers' Compensation Appeal Board (City of Philadelphia)*, 746 A.2d 1219 (Pa.Cmwlth.2000), this Court was asked to decide the issue of whether Employer was entitled to modify disability benefits of the retired firefighter. The claimant in *Camp* received total disability benefits for the injury sustained in 1985 in the course of his employment as the battalion chief in Employer's Fire Department. In 1996, Employer filed the petition to modify the claimant's benefits, alleging that he refused to accept the available light-duty dispatcher position offered by Employer. As in this matter, the claimant ar-

gued that the offered dispatcher position was not available because he would have to give up his pension benefits he was receiving by accepting that position. Without deciding the issue, this Court remanded the matter to the WCJ for further findings, noting that the WCJ failed to make findings as to the effect of the claimant's acceptance of the dispatcher position on his pension and his intention to actively seek work. Unlike *Camp*, the WCJ in this matter made sufficient findings necessary for our disposition of the issue.

ee, his job security, seniority and other employment-related union benefits were no longer relevant in his decision to accept or refuse the offered position.[3]

Moreover, the record does not support Claimant's assertion that he would "lose" his pension benefits previously earned in the unionized firefighter position. As the WCJ found, his pension payment would be merely "suspended," not terminated, during his re-employment in the offered dispatcher position, and his previously earned pension benefits would not be reduced under any circumstances. Rather, his overall pension benefits would be actually increased after years of service in the offered position. In addition, Claimant would have earned in the offered position (1) the starting salary of $22,386 a year and the longevity payment of $1225, more than his current pension payment of approximately $20,000 a year; (2) partial disability benefits based on the difference of the average weekly wages of the pre-injury job and the dispatcher position; (3) and various fringe benefits such as holidays, sick leave days, administrative leave days, life insurance, medical benefits under the plan administered by Employer or by the union, and pension benefits.

Thus, unlike *St. Joe* and the subsequent decisions of this Court, Claimant would not have suffered any "definable qualitative loss" of benefits associated with his previous union membership by accepting the offered light-duty position.

In Pennsylvania, the term "disability" is synonymous with the loss of earning power. *Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.)*, 550 Pa. 276, 705 A.2d 432 (1997); *Edwards v. Workers' Compensation Appeal Board (Sear's Logistic Services)*, 770 A.2d 805 (Pa.Cmwlth.2001). Because Claimant sufficiently recovered from the work injury to be able to perform the offered light-duty position, he no longer suffered from "total" loss of his earning power. "[T]he salutary purpose of workmen's compensation [is] to provide relief due to injuries caused in the workplace." *Kachinski*, 516 Pa. at 250, 532 A.2d at 379. The ultimate goal is to make the injured employee "whole," not to award windfall from the work injury. *St. Joe*, 534 Pa. at 352, 633 A.2d at 130. To accept Claimant's position that he should be allowed to continue to receive both pension benefits and total disability benefits despite his physical capability to perform the available light-duty work offered by Employer would not

Recently in *City of Philadelphia v. Workers' Compensation Appeal Board (Szparagowski)*, 771 A.2d 75 (Pa.Cmwlth.2001), this Court held that the dispatcher position offered by Employer to the claimant, the retired firefighter, was unacceptable and unavailable under *St. Joe* because the claimant would "sacrifice his vested pension in a currently payable status with a retirement age of 45, and be placed in a pension plan that was not yet vested and carried a retirement age of 55." *Id.* at 79. Unlike *Szparagowski*, when Employer offered the dispatcher position, Claimant was fifty-six years old and over the retirement age under the pension plan for a municipal employee. Moreover, Claimant's pension benefits were subject to the condition under the *existing* pension plan that his pension payment would be suspended during

their re-employment. Therefore, Claimant cannot claim that he would lose his *vested* pension benefits.

3. Employer did not seek modification of Claimant's total disability benefits on the basis that he no longer suffered from loss of earnings because he had retired from the pre-injury job. *See Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson)*, 543 Pa. 74, 669 A.2d 911 (1995) (in order to continue to receive disability benefits after retirement, the claimant must establish that he or she is actively seeking employment or that he or she was forced into a compulsory retirement due to the work-related injury).

serve the purpose of workers' compensation.

Since the record supports the WCJ's decision to modify Claimant's benefits, the order of the Board is affirmed.

## ORDER

AND NOW, this 18th day of July, 2001, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.