**James LARDON, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 26, 2001.

Decided Feb. 13, 2002.

Richard R. Di Stefano, Philadelphia, for petitioner.

Martin G. Malloy, Philadelphia, for respondent.

Before SMITH–RIBNER, Judge, KELLEY, Senior Judge,[1] JIULIANTE,

1. This case was assigned to Judge Kelley prior to the date when he assumed the status of

Senior Judge.

KELLEY, Senior Judge.

James Lardon (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) granting the modification petition and dismissing the suspension petition filed by the City of Philadelphia (Employer), and denying the modification petition filed by Claimant. We affirm.

On July 27, 1987, Claimant sustained an injury in the nature of chronic obstructive lung disease—asthmatic bronchitis—due to 21 years of exposure to heat, smoke, gases, and fumes while in the course and scope of his employment as a firefighter with Employer. Pursuant to a supplemental agreement, the parties agreed that as of August 1, 1987, Claimant would receive partial disability benefits of $361 per week based upon an average weekly wage of $550. The supplemental agreement acknowledged that Claimant retains an earning capacity of $5.00 a week.

On May 28, 1996, Employer filed a modification/suspension petition requesting a modification of Claimant's benefits as of May 9, 1996. In the petition, Employer alleged that Claimant exhibited bad faith in refusing an offer of employment within his medical restrictions. Claimant filed an answer denying the material allegations contained therein. On November 18, 1996, Claimant filed a modification petition requesting total disability benefits alleging that as of September 25, 1996, his disability changed from partial to total. Hearings before a WCJ then ensued.

Before the WCJ, in support of its modification/suspension petition, Employer presented the testimony of Dr. Alan Goldberg and Stephen Davis. In opposition thereto and in support of his modification petition, Claimant testified and presented the testimony of Dr. Jonathan L. Gelfand. The WCJ summarized the relevant testimony and evidence as follows:

Dr. Goldberg examined Claimant on February 14, 1996. Although the examination revealed residuals of Claimant's work-related condition, Dr. Goldberg found Claimant's lungs clear, his respiration unlabored, his heart in regular sinus rhythm and all extremities free of cyanosis, edema, and clubbing. The pulmonary function test showed only mild airflow obstruction. Dr. Goldberg testified that Claimant's asthma was under reasonable control, allowing him to function relatively normally. While recognizing that Claimant's condition was deemed "not curable" and of such significance as to preclude his return to pre-injury duties as a firefighter, Dr. Goldberg found him capable of light-duty work and released Claimant to perform the position of fire communications dispatcher.

Mr. Davis, a vocational disability specialist, testified that the fire communications dispatcher position requires an individual to respond to incoming fire calls at a computer console and dispatch appropriate help. Mr. Davis testified that the position was vocationally appropriate for Claimant and within the physical restrictions imposed by Dr. Goldberg. Mr. Davis forwarded a letter to Claimant offering him the fire communications dispatcher position commencing May 9, 1996 at a yearly salary of $21,308. Mr. Davis testified that Claimant did not respond to the offer. On cross-examination, Mr. Davis testified that Claimant would not receive his pension payments during his period of re-employment.

senior judge on January 1, 2002.

Claimant testified that he receives a city pension based upon his age and years of service. Claimant testified that he experiences shortness of breath up to three times per week, but that the problem has not worsened over time. Claimant testified that he received notice of the job offer as a fire communications dispatcher, but did not appear for the position because he did not believe that he could perform a full time job.

Dr. Gelfand examined Claimant on September 25, 1996. Based upon his examination, Dr. Gelfand diagnosed Claimant with asthma and bilateral pleural thickening caused by exposure to asbestos. Dr. Gelfand testified that Claimant's return to work in the dispatcher position was inadvisable until such time that the work site was established as smoke and fume-free. Dr. Gelfand also testified that the requirement of the position that Claimant speak frequently and possibly for extended periods of time was a potential trigger for asthma attacks.

Based upon the testimony and evidence presented, the WCJ found Dr. Goldberg's testimony of Claimant's retained physical ability to be credible and more persuasive than the conclusions offered by Dr. Gelfand. The WCJ further found that the position of fire communications dispatcher actually existed, was available when offered to Claimant and was well within Claimant's retained physical and vocational capacity. Claimant in bad faith failed to accept the position.

The WCJ concluded that Employer met its burden of showing that it made a suitable job available to Claimant, but that Claimant did not exhibit good faith in failing to accept it. Accordingly, the WCJ

granted Employer's modification petition, dismissed Employer's suspension petition and dismissed Claimant's modification petition. Claimant appealed the WCJ's decision to the Board, which affirmed. Claimant now petitions for review with this Court.[2] Claimant presents the following issues for our review:

1. Whether an employer may modify workers' compensation benefits after offering to the claimant a position, which if accepted, would result in the loss of a substantial benefit to the claimant in the nature of the pension he is receiving from the same employer offering him the position.

2. Whether an employer may modify workers' compensation benefits for a claimant suffering from a disease, which the uncontroverted medical evidence shows is an occupational disease for which there is no cure, and is not reversible.

Claimant contends that the WCJ erred in granting Employer's modification petition on the basis of suitable employment being offered, where the acceptance of such employment would result in the loss of Claimant's pension benefits. We disagree.

In seeking a modification of compensation benefits, "the employer has the burden of showing that the disability has ended or has been reduced and that work is available to the claimant and the claimant is capable of doing such work." *Celio v. Workmen's Compensation Appeal Board (Canonsburg General Hospital)*, 109 Pa.Cmwlth.442, 531 A.2d 552 (1987), *petition for allowance of appeal denied,*

---

2. Our scope of review on appeal is limited to determining whether there has been a violation of constitutional rights, whether errors of law have been committed, whether there has been a violation of appeal Board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

518 Pa. 628, 541 A.2d 1139 (1988). In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), our Supreme Court set forth the following four criteria pursuant to which a modification petition may be granted:

1.   The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2.   The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3.   The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4.   If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski*, 516 Pa. at 252, 532 A.2d at 380. If the claimant fails to exercise good faith in following through on the job referral, the claimant's benefits are properly suspended or modified. *Id.* We note that this Court has held that proof of a change in medical condition is not required when it is not the basis for seeking a decrease in benefits. *Lukens, Inc. v. Workmen's Compensation Appeal Board (Williams)*, 130 Pa.Cmwlth.479, 568 A.2d 981 (1989), *petition for allowance of appeal denied*, 527 Pa. 656, 593 A.2d 426 (1990).

■   In determining whether a position is actually "available" under a *Kachinski* analysis, our Supreme Court has held that a referred position may be "unacceptable for some reason unrelated to [a claimant's] physical abilities or his conduct in connection with a valid job referral, thus rendering it unavailable to the claimant." *St. Joe Container Company v. Workmen's Compensation Appeal Board (Staroschuck)*, 534 Pa. 347, 349, 633 A.2d 128, 130 (1993). A clearly definable qualitative loss that cannot be recouped through the acceptance of a subsequently referred position can render that offered position unavailable to a claimant. *Id.; City of Philadelphia v. Workers' Compensation Appeal Board (Szparagowski)*, 771 A.2d 75 (Pa. Cmwlth.2001), *petition for allowance of appeal granted*, ——— Pa. ———, 790 A.2d 1019 (2001).

Recently, this Court in *Szparagowski* and *O'Brien v. Workers' Compensation Appeal Board (City of Philadelphia)*, 780 A.2d 829 (Pa.Cmwlth.2001) addressed the issue of whether a light duty position offered by an employer to a claimant is "unavailable" under a *Kachinski* analysis due to the effect that acceptance of that offer would have on the claimant's pension benefits. Both *Szparagowski* and *O'Brien* involved facts similar to those involved here. Both claimants received disability benefits as a result of disabling injuries suffered during the course and scope of employment as firefighters. *Id.* Both claimants subsequently retired from their firefighter positions and began receiving pension benefits in addition to disability benefits. *Id.* In both cases, the municipal employer sought to modify benefits on the basis that an available light-duty position (as a dispatcher) within the claimant's medical restrictions was offered to the claimant. *Id.* Due to unique facts pertaining to the pension benefits, different results were reached in each case.

In *Szparagowski*, acceptance of the dispatcher position would have caused the claimant to "sacrifice his vested pension in a currently payable status with a retirement age of 45, and be placed in a pension plan that was not yet vested and carried a retirement age of 55." *Id.*, 771 A.2d at 79. This Court concluded that such a sacrifice constituted a clearly definable qualitative

loss and rendered the position unacceptable and unavailable under *St. Joe. Id.*

In *O'Brien,* however, at the time the dispatcher position was offered, the claimant was fifty-six years old and over the retirement age under the pension plan for a municipal employee. Under the claimant's existing pension plan, the claimant's pension payments would be suspended during a period of re-employment but would be reinstated upon re-retirement. *Id.* As a result, returning to work would not jeopardize the claimant's vested pension benefits, but would simply postpone his receipt of those benefits. *Id.* By returning to the workforce under the same pension plan, this Court noted that the claimant's overall pension benefits would actually increase as a result of years of service in the offered position. *Id.* Thus, we determined that the position was in fact "available" and that disability benefits were properly modified upon the claimant's failure to follow through on the job referral.

■ The case before us in more analogous to *O'Brien* than *Szparagowski.* Claimant testified that he is sixty years of age and receives a pension of about $16,000 per year. Reproduced Record (R.) 177a–178a. Mr. Davis testified that upon acceptance of the dispatcher position, Claimant would no longer receive pension benefits during his period of employment. R. 122a. Mr. Davis explained that an employee cannot receive a pension while he is drawing a salary. R. 142a. As in *O'Brien,* Claimant's pension benefits would merely be suspended during his re-employment, but would resume without reduction upon his retirement. The danger of losing a vested pension, as expressed in *Szparagowski,* is not present here. In addition, Mr. Davis testified that Claimant would continue in the same pension plan and his pension entitlement would actually increase due to additional service time

earned in the fire communication dispatcher job. R. 142a. The dispatcher position paid more money than Claimant received from his pension. R. 124a. Claimant would have also gained medical and other benefits in the position. *Id.* We, therefore, conclude that the WCJ did not err in finding that the position was in fact "available" and that Claimant was not justified in refusing the position.

Claimant also contends that the WCJ erred in granting Employer's modification petition on the basis that a modification of benefits is not permitted where the occupational disease is considered irreversible or not curable. Relying solely upon *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 534 Pa. 327, 632 A.2d 1302 (1993), Claimant contends that an employer cannot attempt to terminate or modify benefits of a person receiving workers' compensation for an occupational disease without first showing that the disease is reversible. We disagree.

This very issue was recently addressed in *Brooks v. Workers' Compensation Appeal Board (City of Philadelphia),* 779 A.2d 1261 (Pa.Cmwlth.2001). In *Brooks,* the claimant was disabled by an irreversible occupational disease and was entitled to weekly total disability benefits. The employer sought to modify the claimant's benefits based upon claimant's failure to follow through on four job referrals. *Id.* Just as here, the claimant, relying on *Hebden,* argued that the employer was precluded from seeking a modification of benefits unless the employer could prove that the claimant's occupational disease was reversible. In addressing this issue, this Court summarized *Hebden* as follows:

> In *Hebden,* the claimant was awarded partial disability benefits for an occupationally acquired pulmonary lung disease (coal workers' pneumoconiosis) by a

1985 referee's order that the employer did not appeal. In 1987, the employer filed a modification petition, treated as a termination petition, alleging that the claimant's disability had changed and that he was no longer disabled as a result of an occupational pulmonary disease. The employer's medical witnesses each opined that claimant did not suffer from pneumoconiosis, at least one inferring that he never had the disease in the first place. One witness opined that the claimant suffered only from a mild non-occupationally related asthma. The witnesses all opined that the claimant was fit for a return to work in the mines. The claimant's medical witness testified that the claimant continued to suffer from pneumoconiosis, which he described as a non-reversible, progressive disorder that would get worse with time. The referee found credible and persuasive the employer's evidence that claimant was not disabled as a result of a work-related pneumoconiosis and granted the employer's motion. The Board and this Court both affirmed.

The Supreme Court reversed, holding that the employer's petition was merely a disguised attempt to relitigate what had already been settled. The Court noted that claimant's pneumoconiosis had been established when he prevailed on the claim petition; therefore, it was not permissible for the employer to present its case on the basis that the claimant did not have pneumoconiosis when that disease was described as non-reversible and actually defined as such by the United States Supreme Court. The Court determined that in order for the employer to prevail on its petition, it

was required to present sufficient medical evidence that the disease was in fact reversible in the claimant's case. The employer failed to present such evidence.

*Brooks,* 779 A.2d at 1262–1263 (footnotes omitted).

■ In distinguishing *Brooks* from *Hebden,* this Court noted that the *Brooks* employer was not attempting to modify the claimant's benefits on the basis that his disease was non-existent or reversible, but was simply attempting to modify benefits on the basis that the claimant can perform certain sedentary work while suffering from the disease. *Id.* This Court held that *Hebden* only precludes an employer from re-litigating the issue of whether a claimant has a nonreversible disease. *Id. Hebden,* however, does not preclude an employer from showing that an employee is no longer disabled, i.e. no longer suffers a loss in earning power,[3] from such a disease. *Id.* Thus, in order to seek a modification of benefits, an employer need not show that the occupational disease has reversed. *Brooks.* Rather, in order to prevail, an employer need only show that a claimant is capable of performing modified work and that it referred claimant to an available job within claimant's physical restrictions. *Id.*

■ In the case before us, there is no dispute that Claimant suffers from chronic obstructive lung disease and that this disease is presently irreversible. Although Claimant suffers from a continuing occupational disease and is no longer capable of serving as a firefighter, Employer was able to demonstrate that Claimant is no

---

**3.** In Pennsylvania, the term "disability" is synonymous with the loss of earning power. *Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.),* 550 Pa. 276, 705 A.2d 432 (1997); *O'Brien.* Although a claimant may suffer work-related physical disability, it is only if that disability occasions loss of earnings that the claimant will be "disabled" and entitled to receive compensation. *Bissland v. Workmen's Compensation Appeal Board (Boyertown Auto Body Works),* 162 Pa.Cmwlth.348, 638 A.2d 493 (1994).

longer "disabled" from the disease. With medical evidence, Employer proved that Claimant was capable of performing sedentary work. By producing evidence of a job referral within claimant's medical restrictions, Employer satisfied its burden of proof under *Kachinski*. We, therefore, conclude that the WCJ did not err in granting Employer's modification petition.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 13th day of February, 2002, the order of the Workers' Compensation Appeal Board, dated June 8, 2001, at No. A99–3872, is hereby affirmed.