**CITY OF PHILADELPHIA, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SZPAR-AGOWSKI), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 4, 2000.

Decided March 19, 2001.

Reargument En Banc Denied
May 14, 2001.

---

Sandra L. Jacques, Philadelphia, for petitioner.

Richard R. Di Stefano, Philadelphia, for respondent.

Before SMITH and KELLEY, JJ., and RODGERS, Senior Judge.

KELLEY, Judge.

City of Philadelphia (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that reversed an order of a Workers' Compensation Judge (WCJ). The WCJ granted Employer's modification petition. We affirm.

On February 2, 1989, George Szparagowski (Claimant) injured his lower back in the course and scope of his employment as a firefighter. Employer ultimately accepted responsibility for Claimant's injury, and Claimant began receiving benefits pursuant to the Pennsylvania Workers' Compensation Act (Act).[1]

On March 25, 1996 Employer filed a petition to modify Claimant's benefits, alleging that Claimant was capable of returning to sedentary or light-duty work, and that Claimant had been notified of an available sedentary position with Employer as a fire communication dispatcher. In part relevant to this appeal, Claimant answered alleging that Employer's offer was not in good faith, and that the position was not available to Claimant due to the significant loss of pension benefits that Claimant would suffer had he chosen to accept the dispatcher position.

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

In multiple hearings before the WCJ, the following facts relevant to the case *sub judice* were adduced. Claimant established that his pension, as a result of his age and length of service as a firefighter with Employer, had already vested, and that Claimant was currently receiving benefits thereunder. WCJ Decision, finding of fact no. 8. James Kidwell, a pension program coordinator for Employer, testified as to the effect upon a fire employee receiving an ordinary pension connected to his service with Employer (in Claimant's case, Pension Plan X), if subsequently hired by Employer in a municipal position such as that of fire dispatcher. Reproduced Record (R.R.) at 90a, 102a–103a. Kidwell asserted that such an employee's vested Pension Plan X benefits would be terminated upon re-employment with Employer, and that employee would then be enrolled in a new pension program applicable to the subsequent municipal position (in the case of the fire dispatcher position, Pension Plan J). R.R. at 102a–103a. The employee's retirement benefits would then be calculated and/or vested under the subsequent pension program, Pension Plan J. R.R. at 103a. Kidwell stated that Pension Plan X calls for a lower retirement age and a better benefit calculation than Pension Plan J. R.R. at 68a, 113a. Kidwell further testified that such a pension plan move would change an employee's allowable retirement age from 45 under the firefighter Pension Plan X, to 55 under the municipal Pension Plan J. R.R. at 113a. Kidwell further testified that a pension recipient of Employer returning to work at a position with any employer other than City would continue to draw his vested City pension, notwithstanding that subsequent employment. R.R. at 109a. Claimant argued that he acted in good faith in declining the fire dispatcher position due to the loss of his vested pension that would have occurred had he accepted the position, and due to the change in retirement age that would also attach to such acceptance.

Following the hearings, the WCJ concluded that Employer had met its burden of showing a change in Claimant's disability, and that Employer had offered in good faith the position of fire dispatcher to Claimant, which position was within Claimant's vocational and physical capacities. The WCJ specifically found that the deferral of Claimant's pension upon return to work with Employer was not a qualitative loss sufficient to render the position of fire dispatcher unavailable. Claimant thereafter timely appealed the WCJ's decision and order to the Board.

The Board disagreed with the WCJ, holding that Claimant's loss of his vested pension in current payable status, to be replaced by a pension that requires additional years of service before reaching payable status, is a loss of a qualitative benefit sufficient to render the fire dispatcher position unavailable. Holding that the WCJ erred in determining that the dispatcher position was indeed available to Claimant, the Board reversed the WCJ order. Employer now petitions for review of the Board's order.

■ This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of Appeal Board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

■ The sole issue presented in the instant case is whether the Board erred in ruling, as a matter of law, that the position of fire dispatcher offered by Employer to Claimant is unavailable under a *Kachinski*

analysis due to the effect that acceptance of that offer would have on Claimant's vested pension.[2]

■ In seeking a modification of compensation benefits, "[t]he employer has the burden of showing that the disability has ended or has been reduced and that work is available to the claimant and the claimant is capable of doing such work." *Celio v. Workmen's Compensation Appeal Board (Canonsburg General Hospital),* 109 Pa.Cmwlth.442, 531 A.2d 552, 553 (1987). In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 252, 532 A.2d 374, 380 (1987), our Supreme Court set forth the following procedure for the return to work of injured employees: 1.) The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition; 2.) The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.; 3.) The claimant must then demonstrate that he has in good faith followed through on the job referral(s), and; 4.) If the referral fails to result in a job then claimant's benefits should continue.

In *St. Joe Container Company v. Workers' Compensation Appeal Board (Staroschuck),* 534 Pa. 347, 349, 633 A.2d 128, 130 (1993), our Supreme Court held that, under a *Kachinski* analysis, a referred position may be "unacceptable for some reason unrelated to [a claimant's] physical abilities or his conduct in connection with a valid job referral, thus rendering it unavailable to the claimant." The Court stated that a clearly definable qualitative loss that cannot be recouped through the acceptance of a subsequently referred position can render that offered position unavailable to a claimant. *St. Joe Container,* 534 Pa. at 354–355, 633 A.2d at 132.

Initially, we note that neither party disputes the facts as recited above as they pertain to the issue at hand. Employer argues that *St. Joe Container* is distinguishable from the instant case in that the claimant in *St. Joe Container* stood to lose, upon his acceptance of the subsequent job offered to him, various union benefits that are not at issue in the instant case. Additionally, Employer asserts that the fact that Claimant in this case has already retired, while the claimant in *St. Joe Container* had not yet retired, renders *St. Joe Container* inapplicable to this case. We disagree.

While the facts of *St. Joe Container* are distinguishable from those operable in the instant case, we find *St. Joe Container* to be both instructive and persuasive in addressing the issue at bar. It is quite clear that, notwithstanding the specific benefits at issue in *St. Joe Container,* the Supreme Court's focus in its analysis was whether there was a "clearly definable qualitative loss simply not recouped through acceptance of the [subsequent offered position]". *St. Joe Container,* 534 Pa. at 354, 633 A.2d at 131. The Supreme Court then held that the forfeiture inherent in such a qualitative loss rendered the offered position unaccep-

---

**2.** We note that Employer, in violation of Pennsylvania Rule of Appellate Procedure 2116, failed to include in its brief a Statement of Questions Involved. It appears that the omission of the Statement of Questions was inadvertent, as the Table of Contents lists the Statement as included on page 4, but page 4 is missing from Employer's brief. Thus, although Rule 2116 clearly states that the inclusion of the Statement of Questions Involved "is to be considered in the highest degree mandatory", we will address Employer's issue as developed in its brief.

table given the sacrifice required of the claimant in accepting the position, and therefore rendered the offered position unavailable for purposes of a petition to modify. *Id.*

In the instant case, it is uncontested that acceptance of the dispatcher position by Claimant would require him to sacrifice his vested pension in a currently payable status with a retirement age of 45, and be placed in a pension plan that was not yet vested and carried a retirement age of 55. Notwithstanding Employer's argument that, under no circumstances would Claimant's pension benefits be less than what he had already received under his prior plan, we agree with the Board's focus on what Claimant would actually lose—a vested pension in payable status with a retirement age of 45—in determining whether a qualitative loss existed under *St. Joe Container.*

We hold that, under the facts of this case, the loss of a vested pension in current payable status, combined with the loss of a pension plan allowing retirement at a significantly lower age, is a clearly defined qualitative loss under *St. Joe Container* that renders the offered position of fire dispatcher unacceptable and unavailable.

Accordingly, we affirm the order of the Board.

### ORDER

AND NOW, this *19th* day of *March,* 2001, the order of the Workers' Compensation Appeal Board dated December 30, 1999, at A98–3636, is affirmed.