**Joseph MILICI, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted March 9, 2001.
Decided July 18, 2001.

Richard R. Di Stefano, Philadelphia, for petitioner.

Marianne Henry, Philadelphia, for respondent.

Before SMITH, Judge, FRIEDMAN, Judge, McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

Joseph Milici (Claimant) petitions for review of an October 11, 2000 order of the Workers' Compensation Appeal Board (WCAB) affirming the decision of the workers' compensation judge (WCJ) to modify Claimant's benefits as of March 10, 1997, based on Claimant's bad faith rejection of an existing and available job offered by Employer.[1] We affirm.

Claimant was employed by the City of Philadelphia (Employer) as a firefighter when, on January 20, 1988, he became totally disabled as a result of coronary artery disease and obstructive lung disease from work-related stress and his inhalation of toxic irritants on the job. (WCJ's Findings of Fact of 6/6/90, No. 4; R.R. at 203a.)

Claimant filed a petition for total disability benefits pursuant to section 108(o) of the Workers' Compensation Act (Act),[2] which the WCJ granted in a June 6, 1990 order at a rate of $376.36 per week beginning January 21, 1988. (WCJ's Conclusions of Law of 6/6/90, No. 2; R.R. at 204a.)

In March 1997, Employer filed a Petition to Modify Compensation Benefits (modification petition) on the basis that Claimant acted in bad faith in failing to accept alternate employment within his physical capabilities. (R.R. at 1a–2a.) Claimant filed an answer denying the allegations. (R.R. at 3a.) Employer filed a request for supersedeas, which was denied by the WCJ in an October 23, 1997 interlocutory order. (WCJ's decision of 5/28/99 at 2.) Hearings on the modification petition were held before the WCJ from October 1997 through July 1998. (WCJ's decision of 5/28/99 at 2.)

In support of the modification petition, Employer submitted the deposition testimony of two medical experts: Subrahmanyam Chivukula, M.D., board-certified in internal and critical care medicine, cardiology, and nuclear cardiology; and Alan Goldberg, M.D., board-certified in internal, pulmonary and critical care medicine. (WCJ's Findings of Fact of 5/28/99, Nos. 2–4; R.R. at 8a, 59a.)

The WCJ accepted Dr. Chivukula's testimony that, although Claimant had a history of cardiac pathology which lead to a

---

1. The WCAB also reversed the WCJ's decision to modify Claimant's benefits based upon his earning value as a jeweler's helper from February 26, 1997 to March 10, 1997; however, that portion of the decision is not at issue here.

2. Section 108(o) of the Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 27.1(o), provides:

The term "occupational disease," as used in this act, shall mean only the following diseases . . .

(o) Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such firemen.

coronary artery bypass, a physical examination of Claimant revealed normal blood pressure, clear lungs and an "essentially unremarkable" cardiac status. These findings led Dr. Chivukula to conclude that the position of fire communications dispatcher offered by Employer was within Claimant's physical capabilities. (WCJ's Findings of Fact of 5/28/99, No. 3.)

The WCJ also credited Dr. Goldberg's testimony that, although Claimant indicated that he was not doing well emotionally and had shortness of breath, an examination revealed that Claimant's chest was clear and his heart and extremities were normal. The WCJ accepted Dr. Goldberg's finding that Claimant had no active lung disease at the time of the examination. Dr. Goldberg acknowledged that obstructive lung disease is incurable, but he determined that it was not detectable in Claimant during the examination, and any shortness of breath was probably due to Claimant's cardiovascular deconditioning. Dr. Goldberg released Claimant to go back to work in a full-time capacity and approved the fire communications dispatcher position. (WCJ's Findings of Fact of 5/28/99, No. 4.)

Employer also submitted the deposition testimony of Rabia Rosen, a rehabilitation counselor; Cynthia Hawthorne, the former assistant personnel officer for Employer's fire department; and James Kidwell, a pension program administrator for Employer. (WCJ's Findings of Fact of 5/28/99, Nos. 2, 5–7.) The WCJ accepted Rosen's testimony that she met with Claimant and sent him a letter regarding the fire communications dispatcher position. The job, which paid a yearly salary of $22,386, required an individual to operate the telephone switchboard and radio transmitter, determine the nature of emergency calls and arrange for the dispatch of appropriate emergency assistance. The WCJ found credible Rosen's testimony

that Claimant attended an interview and was offered the position, but Claimant did not appear for the first day of work scheduled for March 10, 1997. (WCJ's Findings of Fact of 5/28/99, No. 5.) The WCJ also accepted Hawthorne's testimony that she interviewed Claimant and offered him the fire communications dispatcher position, but Claimant did not accept the position. (WCJ's Findings of Fact of 5/28/99, No. 6.)

Finally, the WCJ accepted Kidwell's testimony regarding the pension rights of Employer's employees upon their return to work. Kidwell testified that if a fire employee receiving a service-connected pension is rehired by Employer in a municipal position, the pension benefits are suspended during the period of reemployment; all of the credit service from the former position would roll into the municipal plan and the subsequent retirement benefit would be calculated under the municipal plan formula. Kidwell acknowledged that if a person returned to the work force with someone other than Employer, the pension benefits would not be suspended. (WCJ's Findings of Fact of 5/28/99, No. 7.)

Claimant appeared and testified on his own behalf in defense of the modification petition. (WCJ's Findings of Fact of 5/28/99, No. 9.) Claimant testified that he receives a retirement pension of $15,000 per year from Employer, based upon his age and years of service. Claimant indicated he did not accept the fire communications dispatcher position because he could not handle the stress of the job. (WCJ's Findings of Fact of 5/28/99, No. 10.) Claimant also argued that he would lose his right to his pension if he were to resume working for Employer. (WCJ's Decision of 5/28/99 at 7.)

In a May 28, 1999 order, the WCJ granted Employer's modification petition, concluding that Employer's offer to Claimant on March 10, 1997 of the fire communi-

cations dispatcher position constituted an offer of existing and available work within Claimant's physical and vocational capacity and that Claimant failed to establish that he followed through with the job offer in good faith. (WCJ's Conclusions of Law of 5/28/99, Nos. 3–4.) Thus, the WCJ concluded that, as of March 10, 1997, Employer's obligation to pay partial disability benefits was reduced to $89.34 per week. (WCJ's Conclusions of Law of 5/28/99, No. 5.)

Claimant appealed to the WCAB, arguing that numerous findings were not supported by substantial evidence. Claimant also asserted that the WCJ erred in determining that Claimant's disability had improved to the extent that he was able to work, pointing out that both doctors testified that Claimant's occupational diseases were incurable. The WCAB affirmed the WCJ's decision to grant Employer's modification petition based on Claimant's bad faith rejection of an existing and available job offered by Employer. Applying the test articulated in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987),[3] the WCAB determined that, because the deferral of Claimant's pension was not a qualitative loss sufficient to render the position unavailable, there was sufficient evidence that Employer satisfied the first two prongs of the *Kachinski* test. The WCAB then concluded that Claimant failed to establish that he had followed through with the job referral in good faith where the medical experts testified that Claimant was capable of performing the job duties for a fire communications dispatcher.

Claimant now petitions this court for review of the WCAB's order,[4] arguing first that, because Employer's medical experts testified that Claimant's coronary artery disease and obstructive lung disease are not curable, the supreme court's decision in *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 534 Pa. 327, 632 A.2d 1302, (1993) applies[5]

---

**3.** In *Kachinski,* our supreme court set forth the following test:

 1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.
 2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.
 3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).
 4. If the referral fails to result in a job then claimant's benefits should continue.

**4.** Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**5.** In *Hebden,* the claimant was awarded workers' compensation partial disability benefits for an occupationally acquired pulmonary lung disease, coal worker's pneumoconiosis. Four years after the WCJ (then, referee) granted benefits, the employer filed a modification petition, which was treated as a petition to terminate benefits. The employer's medical experts testified that the claimant no longer had pneumoconiosis, but a mild functional respiratory impairment due to chronic bronchial asthma, a non-occupational condition, and that claimant was fit to return to work in his original job as a shuttle car operator in the mines. The WCJ determined that the claimant's disability had ceased to exist and, thus, ordered that the claimant's benefits be terminated. *See Hebden.*

The claimant appealed, and, in an en banc opinion, this court affirmed the WCAB's decision affirming the WCJ. However, our supreme court reversed, holding that:

 [The Act] expressly provides that an award may be terminated based on *changes* in the claimant's disability. But that raises the logical question of whether an employee's

and precludes modification of Claimant's workers' compensation benefits. We disagree.

In this case, as in *Hebden,* Claimant's occupational diseases are irreversible; [6] however, unlike the case in *Hebden,* where the employer attempted to challenge the diagnosis of occupational diseases, the issue that Employer presents here is whether Claimant, despite his diseases, is able to work in a modified position. Because the court in *Hebden* did not decide this question, *Hebden* does not prohibit Employer's litigation of this issue. As to its resolution, we derive guidance from *McGonigal v. Workers' Compensation Appeal Board (City of Philadelphia),* 713 A.2d 692 (Pa. Cmwlth.1998), a case in which this court addressed a claimant's *Hebden* argument in a medical examination context.

In *McGonigal,* the claimant had been working as a firefighter for Employer for twenty years when he began to experience nausea, dizziness, lightheadedness, faintness and vomiting during an exertion test. The claimant filed a claim petition under section 108(*o*) of the Act and alleged that he was permanently disabled as a result of his duties as a firefighter. In granting the claim petition, the referee found that the claimant was partially disabled from his years of fire fighting, but awarded the claimant total disability benefits because Employer failed to show that there were

jobs available to the claimant within his physical limitations and commensurate with his age, education and experience. Sixteen years later, Employer scheduled a physical examination of the claimant, which the claimant failed to attend. In response to Employer's petition for physical examination, the claimant argued that, because his occupational disease was progressive by nature, his condition could not improve, and, therefore, he should not be required to undergo a physical examination. *See McGonigal.*

The WCJ, affirmed by the WCAB, ordered the claimant to undergo the examination. On appeal to this court, the claimant relied upon *Hebden* as support for his proposition that Employer was precluded from requesting a physical examination because the claimant's occupational disease was irreversible as a matter of law. We disagreed and affirmed the WCAB. In doing so, we held that, even though a disease is classified as "occupational," that does not make the disease irreversible. Further, we recognized that *Hebden* would *not* preclude Employer from seeking a medical examination *even if the claimant's condition was irreversible.* We noted that *Hebden* did not address whether the claimant's condition permitted him to take a modified position, and we concluded that "[j]ust because a claimant has an irreversible disease does not mean that no alternative

---

disability is *changeable* in a given case. If it is, an employee's condition may be re-examined at a later time to see if he [or she] is still disabled or not. If it is not, an attempt to re-examine the employee's condition is merely a disguised attempt to relitigate what has already been settled. *Hebden,* 534 Pa. at 331, 632 A.2d at 1304. Thus, res judicata or issue preclusion bars relitigation of the original medical diagnosis underlying a referee's finding of a claimant's disability when the claimant has an irreversible occupational disease. *Id.*

**6.** In this case, there was no evidence that Claimant's coronary artery disease and ob-

structive lung disease are reversible. In fact, both of Employer's doctors were questioned regarding the reversibility of the diseases. Dr. Chivukula was asked whether coronary artery disease was curable and he answered, "No." (R.R. at 73a.) Dr. Chivukula was also asked if Claimant still has coronary artery disease, despite having a coronary artery bypass grafting, and he answered, "Yes." (R.R. at 74a.) Dr. Goldberg testified, "Actually, there are probably no forms of obstructive lung disease that are curable at this time." (R.R. at 26a.)

work is suitable." *McGonigal*, 713 A.2d at 694.

In *City of Philadelphia v. Workers' Compensation Appeal Board (Welsch)*, 728 A.2d 428 (Pa.Cmwlth.1999), we applied *McGonigal* in another medical examination case involving a firefighter as the claimant. Once again, we held that, although *Hebden* stands for the proposition that a medical diagnosis cannot be relitigated in an irreversible occupational disease case, *Hebden* does not bar an employer from seeking a physical examination or exploring whether the claimant could work in a modified position. Otherwise, we reasoned, "all occupational disease claimants would be put into an untouchable class that can never be subject to an evaluation of their physical status, work capacities or medical treatment." *Id.* at 430.

 Claimant argues that *McGonigal* and *City of Philadelphia* do not apply here because they are medical examination cases. We disagree that this distinction is relevant. Rather, the analysis in *McGonigal* and the cases that follow it are extremely relevant to the extent that they establish that a claimant's occupational disease does not automatically prohibit the claimant from working. As long as an employer is not revisiting the original medical diagnosis, an employer is not barred from filing a modification petition and showing that there is available work that the claimant is capable of performing. As applied to the current matter, this means that, although Claimant will always have coronary artery and obstructive lung diseases and cannot perform his original position of firefighter, Claimant is not necessarily disabled from every other position. Here, Employer established that Claimant is able to perform a modified position, that of a fire communications dispatcher.

 Before deciding that Claimant acted in bad faith by refusing this modified position, the WCAB applied, and concluded

that Employer met, the first two prongs of the *Kachinski* test. However, we believe the WCAB erred in doing so because, in an irreversible occupational disease case, the first prong of the *Kachinski* test, which requires the employer to produce medical evidence of an improvement in *condition*, is inapplicable. *See Hebden.* Instead, in such a case, the employer must show that, although the claimant has not recovered medically, the claimant's *disability*, that is, loss of earning power, has changed. *See Ginyard v. Workers' Compensation Appeal Board (City of Philadelphia)*, 733 A.2d 674 (Pa.Cmwlth.1999) (stating that an injury is not compensable unless it results in some disability, i.e., a loss of earning power). Thus, this type of case requires the application of a modified *Kachinski* test:

1. The employer who seeks to modify *the benefits of a claimant with an irreversible occupational disease* on the basis that *the claimant can work in a modified position* must first produce *evidence that the claimant has been given medical clearance for the modified position.*

2. Next, the employer must produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance.

3. The claimant must then demonstrate that he has in good faith followed through with the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*See Kachinski.*

In this case, the WCJ found that Dr. Goldberg released Claimant to go back to work in a full-time capacity and approved the fire communications dispatcher position. (WCJ's Findings of Fact of 5/28/99, No. 4.) Claimant does not challenge this finding. Thus, Employer has satisfied the

first prong of the modified test. Next, we must determine if the job was available to Claimant.

■ Typically, a job is available if the employer is able to show that the claimant was offered an open job for which the claimant has been given medical clearance. However, our supreme court recognized in *St. Joe Container Company v. Workmen's Compensation Appeal Board (Staroschuck)*, 534 Pa. 347, 633 A.2d 128 (1993), that a job can also be unacceptable for a reason unrelated to the claimant's physical abilities or the employer's job referral, rendering the position unavailable to the claimant.

Here, Claimant argues that the dispatcher position was unavailable to him because, if he did accept the job, his pension benefits would be suspended and Claimant would suffer the loss of a substantial benefit. Further, Claimant points out, if he were to accept a position with any other employer, his pension benefits would not cease. We disagree that the deferral of Claimant's pension was a qualitative loss sufficient to render the position unavailable.

■ The ultimate goal of the Act is to make the injured employee whole, not to put the employee in a *better* position than he or she had been in before the injury occurred. *See St. Joe Container.* In *St. Joe Container*, the supreme court explained that, in order to make an injured employee whole, "the extent of the injury caused in the workplace may reasonably include the loss of qualitative benefits associated with the claimant's *former position* ...."[7] Accordingly, the supreme court held that a job was unavailable to an injured employee where accepting the alternative employment meant that the employee would lose all of the benefits associated with his union status that he would have retained if he had been able to return to his time of injury position. That is not this case.

■ Here, Claimant argues that the dispatcher job is unavailable because accepting it would mean a suspension of his pension benefits. However, we note that, if Claimant were able to return to his time of injury position, it would also mean that his pension would be suspended while he was working. Therefore, Claimant would lose no benefits associated with his former position by accepting alternate employment. Further, because the firefighter pension would roll over into the municipal pension, Claimant would not be losing his pension; the only thing Claimant would "lose" would be the opportunity to collect a salary and a pension simultaneously.[8] However, this is an opportunity that Claimant would not have if he were to return to his prior job or, more importantly, if he had never been injured. Simply stated, Claimant cannot refuse an available job with Employer so that he can collect both workers' compensation benefits and a pension.[9]

---

7. This court has adopted the supreme court's subjective analysis in *St. Joe Container* of the entire array of benefits available to the claimant in the original position when assessing the availability of a modified position offered by the employer. *See ABF Freight Systems, Inc. v. Workers' Compensation Appeal Board (Iten)*, 744 A.2d 348 (Pa.Cmwlth.2000).

8. If Claimant would like to receive both his pension and a salary, Claimant could do so by finding a job on his own with someone other than Employer.

9. In fact, we note that pursuant to the WCJ's August 28, 1990 decision, Claimant was receiving $376.36 per week in workers' compensation benefits, (WCJ's Findings of Fact of 5/28/99, No. 1), in addition to the $15,000 per year in pension benefits, for an income of approximately $34,500.00 per year. As a firefighter, Claimant earned an average weekly wage of $564.52, (WCJ's Findings of Fact of 6/6/90, No. 3), for a yearly income of approximately $29,300.00. Thus, following his injury, Claimant received approximately

We recognize that we were presented with a similar fact situation in a recent case, *City of Philadelphia v. Workers' Compensation Appeal Board (Szparagow-ski)*, 771 A.2d 75 (Pa.Cmwlth., 2001), in which we determined that the claimant did suffer a clearly definable qualitative loss under *St. Joe Container* that rendered the dispatcher position unavailable and unacceptable. However, in *Szparagowski*, had the claimant, a firefighter between the ages of forty-five and fifty-five, taken a dispatcher position, he would have been required to "sacrifice his vested pension in a currently payable status with a retirement age of 45, and be placed in a pension plan that was not yet vested and carried a retirement age of 55." (At 79.) Our decision in *Szparagowski* was based, in large part, on the fact that the claimant would suffer the loss of a pension that was vested and payable at forty-five. Because Claimant here is fifty-nine years old, four years past the retirement age for the municipal pension, he would not be losing a vested pension and, thus, would not suffer that same loss. In sum, because Claimant can perform the dispatcher job and because he would not suffer a definable qualitative loss by accepting the offered position, that job was actually available to Claimant.

Consequently, Employer has satisfied its burden.

Finally, under the third prong of our modified *Kachinski* test, Claimant must show that he has in good faith followed through with the job referral. Here, Claimant does not dispute that he failed to return for his first day of work in the dispatcher position. Claimant did assert that he could not handle the stress of the position; however, as the WCAB determined, Claimant failed to amend his claim to include a psychological injury. Thus, we need not address this issue. Employer's March 10, 1997 offer of the dispatcher position was an offer of an existing and available job within Claimant's abilities, and Claimant failed to establish that he declined to accept the position in good faith.

Accordingly, we affirm.

### ORDER

AND NOW, this 18th day of July, 2001, the order of the Workers' Compensation Appeal Board, dated October 11, 2000, is hereby affirmed.

$5,200.00 more per year than when he was working.