**CITY OF PHILADELPHIA, Petitioner,**

v.

**WORKERS' COMPENSATION
APPEAL BOARD (KOS),
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 12, 2001.

Decided Nov. 20, 2001.

Martin G. Malloy, Philadelphia, for petitioner.

Jack Famiglietti, Philadelphia, for respondent.

Before COLINS, Judge, McGINLEY, Judge, and RODGERS, Senior Judge.

McGINLEY, Judge.

The City of Philadelphia (Employer) petitions for review from the order of the Workers' Compensation Appeal Board (Board) that reversed the decision of the Workers' Compensation Judge (WCJ) that granted Employer's modification petition.

Jerry Kos (Claimant)[1] worked as a firefighter for Employer from 1965 through March 5, 1991. Pursuant to a supplemental agreement dated June 29, 1993, Claimant and Employer agreed that Claimant suffered an occupational lung disease under Section 108(o) of the Workers' Compensation Act[2], had a weekly earning capacity of $20 as of March 5, 1991, and was entitled to compensation at the rate of $436 per week for 500 weeks based on an average weekly wage of $675.00.

On January 26, 1996, Employer petitioned to terminate, modify, or suspend Claimant's benefits as of August 9, 1995. Employer alleged "Claimant was offered employment with defendant [Employer] which claimant has refused in bad faith. The job offered is within claimants [sic] physical capacity." Petition to Terminate, Modify or Suspend, January 26, 1996, at 1; Reproduced Record (R.R.) at 1.

Employer presented the deposition testimony of James H. Earhart (Earhart), a vocational rehabilitation counselor. Earhart identified a job for Claimant within his physical and vocational limitations as a fire communications dispatcher (Dispatcher) for Employer. Deposition of James H. Earhart, July 30, 1996, (Earhart Deposition) at 24; R.R. at 16a. Earhart testified that he notified Claimant by letter dated August 19, 1995, of the availability of the dispatcher job and advised him to report for an interview and to begin work on August 21, 1995. Earhart testified that Claimant did not report. Earhart Deposition at 34–35; R.R. at 26a–27a.[3]

---

1. We note that Claimant did not comply with Pa.R.A.P. 2112 which requires that appellee's brief contain a summary of argument and complete argument as his brief only contains a summary of argument. However, we can glean Claimant's argument from the summary and will address it.

2. Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of the Act of October 17, 1972, P.L. 930, 77 P.S. § 27.1(o), which provides:

   (o) Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme overexertion in times of stress or danger or by exposure to heat, smoke, fumes, or gasses, arising directly out of the employment of any such firemen.

3. Employer also presented the deposition testimony of Alan Goldberg, M.D. (Dr. Goldberg), board-certified in internal medicine with a subspecialty in pulmonary disease. Dr. Goldberg examined Claimant on March 15, 1995, took a history, and reviewed medical records. Dr. Goldberg testified within a reasonable degree of medical certainty that from a pulmonary standpoint Claimant

Employer also presented the deposition testimony of James Kidwell (Kidwell), pension program administrator with Employer. Kidwell explained that Employer had three active pension plans for individuals hired before July 1, 1988: Plan X for firefighters, Plan D for police, and Plan J for municipal employees. James Kidwell Deposition, September 4, 1997, (Kidwell Deposition) at 21; R.R. at 94a. Kidwell also testified that the normal retirement age under Plan X was forty-five and under Plan J was fifty-five. Kidwell Deposition at 22; R.R. at 95a. Kidwell testified that when a police or fire officer who was receiving a service retirement benefit was subsequently rehired by Employer in a municipal position, pension benefits were suspended during the period of reemployment and the employee was enrolled in Plan J. Kidwell Deposition at 23; R.R. at 96a. Kidwell testified that when the employee ultimately retired he would receive a pension benefit at least equal to what he received before but would not receive retroactive benefits for the time the benefits were suspended. Kidwell Deposition at 60. Kidwell characterized Pension Plan X as better than Plan J because it calls for a lower normal retirement age and a better

benefit calculation. Kidwell Deposition at 68.

Claimant testified that he could not perform the job of Dispatcher because of his lower back pain, because the stress of the job which would impact upon his high blood pressure and because he was prone to coughing fits of five to ten minutes in duration. Notes of Testimony, October 28, 1997, (N.T.) at 5–6; R.R. at 127a–128a. Claimant admitted on cross-examination that he did not apply for the fire dispatcher position. N.T. at 13; R.R. at 135a. He also admitted that his pension earnings would exceed the amount he would earn from the fire dispatcher job. N.T. at 16.

Claimant presented the deposition testimony of Les Yost, president of Local 22, the Philadelphia Firefighters Union. Yost explained the benefits available to union members including those no longer working. He also testified that the Dispatcher job was not available to a member of Local 22 because the position requires a competitive written test and placement on a civil service list. Deposition of Les Yost, May 12, 1997 at 15.[4]

The WCJ granted Employer's modification petition and reduced Claimant's week-

could perform the job of Dispatcher. Deposition of Alan Goldberg, M.D., August 15, 1996, (Dr. Goldberg Deposition) at 24–25; R.R. at 43a–44a.

Employer also presented the deposition testimony of Norman Makous, M.D. (Dr. Makous), board-certified in internal medicine and cardiology. Dr. Makous examined Claimant on July 22, 1997, took a history, and reviewed medical records. Dr. Makous testified within a reasonable certainty that Claimant was medically able to perform the job of Dispatcher. Deposition of Norman Makous, M.D., September 24, 1997, at 27; R.R. at 123a.

4. Claimant also presented the deposition testimony of Jay H. Davidson, M.D. (Dr. Davidson), board-certified in internal medicine and

gastroenterology. Dr. Davidson examined Claimant on December 23, 1996, and on January 30, 1997, took a history and reviewed medical records. Dr. Davidson testified that it would be "risky" for Claimant to take the Dispatcher position based on his medical condition. Deposition of Jay H. Davidson, M.D., June 3, 1997, at 39; R.R. at 64a.

Claimant also presented the deposition testimony of Jonathan L. Gelfand, M.D. (Dr. Gelfand), board-certified in internal medicine and pulmonary disease. Dr. Gelfand examined Claimant on January 15, 1997, took a history, and reviewed medical records. Dr. Gelfand testified that he would not approve of Claimant taking the Dispatcher job because the stress and prolonged speaking could trigger asthma. Deposition of Jonathan L. Gelfand, M.D., June 13,1997, at 22.

ly compensation benefits to $172.19, and dismissed Employer's termination and suspension petitions. The WCJ found Earhart, Kidwell, Dr. Goldberg, and Dr. Makous credible and rejected the testimony of Claimant, Yost, Dr. Gelfand, and Dr. Davidson. The WCJ made the following relevant finding of fact:

> 16. The Judge finds that the Fire Communications Dispatcher position was within the Claimant's physical restrictions from Dr. Goldberg. The position was available to the Claimant based on the testimony by Dr. Earhart. The Judge finds that the Claimant exhibited bad faith by failing to report for work at this job.
>
> a. The Judge finds that the Claimant's change in pension status did not render the job unavailable to the Claimant. The Claimant's pension would only be suspended during his period of re-employment and his pension benefit upon retirement from the Fire Communications Dispatcher position would be at least as much as his current position.
>
> b. The Judge also finds that there is no credible evidence that the Claimant's union benefits would be adversely affected by his acceptance of the Fire Communications Dispatcher position so as to make the job unavailable to Claimant.

WCJ's Decision, August 24, 1999, Findings of Fact No. 16 at 12.

Claimant appealed to the Board. The Board reversed:

> In *City of Philadelphia v. Szparagowski (W.C.A.B.)*, 771 A.2d 75 (Pa.Cmwlth. 2001), the [Commonwealth] Court determined that the loss of a vested pension in current payable status, combined with the loss of a pension plan allowing retirement at a significant lower wage, was a loss of a qualitative benefit as discussed in St. Joe Container Co. Accordingly, in Szparagowski, the Court determined that the dispatcher position was not available to the claimant.
>
> Based on this precedent, and Mr. Kidwell's explanation regarding the change in pension rights if Claimant would have accepted the dispatcher position, we cannot agree with the Judge that Defendant made a position available to Claimant so as to entitle it to a modification of his benefits. By accepting the dispatcher position, Claimant would have forfeited his rights under his current pension plan for another pension plan offered only to municipal employees. Mr. Kidwell acknowledged that this pension plan is inferior to the firefighters', with a higher retirement age and less favorable benefit calculation. Accordingly, we must reverse the Judge's grant of the Modification Petition.

Board Opinion, June 8, 2001, at 8–9.

■ Employer contends that the Board erred as a matter of law when it reversed the WCJ where Claimant failed to act in good faith in pursuing the job referral.[5]

■ The employer bears the burden of proof to modify a claimant's benefits based on a claimant's alleged ability to return to work.[6]

---

5. Our review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

6. In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), our Pennsylvania Supreme Court adopted the following requirements which an employer must meet to satisfy its burden to modify compensation payments:

In *St. Joe Container Co. v. Workmen's Compensation Appeal Board (Staroschuk)*, 534 Pa. 347, 633 A.2d 128 (1993), our Pennsylvania Supreme Court recognized that job availability was not always determined by physical and vocational ability. In *St. Joe*, Andrew Staroschuk (Staroschuk) was a unionized machine operator who was receiving compensation due to a work-related back injury. St. Joe Container Co. (St. Joe), offered Staroschuk a new non-union salaried position as a shipping clerk, a job which was within his physical restrictions. Staroschuk refused the position because if he worked in the position for longer than six months he would forfeit seniority, security, and associated benefits. The WCJ granted St. Joe's modification petition. The Board reversed to the extent that Staroschuk's benefits were modified beyond the initial six-month period, when his union benefits were affected. This Court affirmed the Board. *St. Joe*, 534 Pa. at 349–351, 633 A.2d at 129–130. Our Pennsylvania Supreme Court affirmed:

> Here we must determine whether the job is, in essence, unacceptable for some reason unrelated to the employee's physical abilities or his conduct in connection with a valid job referral, thus rendering it unavailable to the Claimant [Staroschuk].
>
> . . . .
>
> As a member of the union for 36 years Claimant [Staroschuk] possessed the protection and benefits provided by the union contract, job security, seniority, time and a half pay for overtime, bidding rights for higher paying jobs, etc., together with the obvious intangible value arising from his length of service and union association. All other things being essentially equal, this is a clearly definable qualitative loss simply not recouped through acceptance of the shipping clerk position.

*St. Joe*, 534 Pa. at 352, 354, 633 A.2d at 130–131.

Recently, this Court addressed factual situations similar to the present controversy in four decisions. In *Camp v. Workers' Compensation Appeal Board (City of Philadelphia)*, 746 A.2d 1219 (Pa.Cmwlth. 2000), Dennis Camp (Camp) sustained a work-related back injury while employed as a battalion chief in the City of Philadelphia Fire Department. Camp was referred to a Dispatcher position but refused to apply. The City of Philadelphia petitioned to modify. The WCJ granted the modification petition and the Board affirmed. Before this Court, Camp contended that the Board erred when it concluded that his benefits could be modified when he was receiving a pension and the value of the pension was greater than the proffered position from the same employer. *Camp*, 746 A.2d at 1220–1221. Because the WCJ failed to make findings regarding the effect of the proffered job on Claim-

---

1. The employer must produce medical evidence of a change in the employee's condition.

2. The employer must produce evidence of a referral or referrals to a then open job (or jobs), which fits the occupational category which the claimant has been given medical clearance e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then the claimant's benefits should continue.

*Kachinski*, 516 Pa. at 252, 532 A.2d at 380. This Court does not require an employer to prove a change of condition when the modification petition was based on job availability rather than a change in physical status. *Lukens, Inc. v. Workmen's Compensation Appeal Board (Williams)*, 130 Pa.Cmwlth.479, 568 A.2d 981 (1989).

ant's pension, this Court remanded for additional findings of fact and conclusions of law. *Camp*, 746 A.2d at 1222.

In *City of Philadelphia v. Workers' Compensation Appeal Board (Szparagowski)*, 771 A.2d 75 (Pa.Cmwlth.2001), George Szparagowski (Szparagowski) was a firefighter who suffered a work-related injury for which he received compensation benefits. The City of Philadelphia notified Szparagowski of an available Dispatcher position. *Szparagowski*, 771 A.2d at 76. Before the WCJ, Szparagowski established that his pension as a firefighter was already vested and he was receiving pension benefits. Kidwell testified that Szparagowski would not earn his pension while working as a dispatcher and that he would be enrolled in Pension Plan J for municipal employees. Kidwell stated that the pension for a firefighter had a better benefit calculation than did Pension Plan J and that the retirement age under the firefighter pension was forty-five and the retirement age was fifty-five under Pension Plan J. The WCJ granted the modification petition. The Board reversed. *Szparagowski*, 771 A.2d at 77. This Court affirmed the Board and determined:

> In the instant case, it is uncontested that acceptance of the dispatcher position by Claimant would require him to sacrifice his vested pension in a currently payable status with a retirement age of 45, and be placed in a pension plan that was not yet vested and carried a retirement age of 55. Notwithstanding Employer's argument that, under no circumstances would Claimant's pension benefits be less than what he had already received under his prior plan, we agree with the Board's focus on what Claimant would actually lose—a vested pension in payable status with a retirement age of 45—in determining whether a qualitative loss existed under St. Joe Container.

> We hold that, under the facts of this case, the loss of a vested pension in current payable status, combined with the loss of a pension plan allowing retirement at a significantly lower age, is a clearly defined qualitative loss under St. Joe Container that renders the offered position of fire dispatcher unacceptable and unavailable.

*Szparagowski*, 771 A.2d at 79.

In *Milici v. Workers' Compensation Appeal Board (City of Philadelphia)*, 778 A.2d 1282 (Pa.Cmwlth.2001), the City of Philadelphia petitioned to modify the benefits of Joseph Milici (Milici), a disabled firefighter who refused an offered Dispatcher position that paid $22,386.00 per year. Kidwell again testified that Milici's pension would be suspended if he took the Dispatcher position and that all of the credit service from the former position would roll into the municipal plan and the subsequent retirement benefit would be calculated under the municipal plan formula. Milici testified that he currently received a pension of $15,000 per year. *Milici*, 778 A.2d at 1284–1285. The WCJ granted the modification petition. The Board affirmed. *Milici*, 778 A.2d at 1285–1286. With respect to the issue of availability, this Court determined:

> [I]f Claimant [Milici] were able to return to his time of injury position, it would also mean that his pension would be suspended while he was working. Therefore, Claimant [Milici] would lose no benefits associated with his former position by accepting alternate employment. Further, because the firefighter pension would roll over into his municipal pension, Claimant [Milici] would not be losing his pension; the only thing Claimant [Milici] would 'lose' would be the opportunity to collect a salary and a pension simultaneously. However, this is an opportunity that Claimant [Milici]

would not have if he were to return to his prior job or, more importantly, if he had never been injured. Simply stated, Claimant [Milici] cannot refuse an available job with Employer so that he can collect both workers' compensation benefits and a pension. (Footnotes omitted).

*Milici*, 778 A.2d at 1289.

This Court distinguished *Milici* from *Szparagowski* on the basis that Szparagowski was between forty-five and fifty-five years of age, and would have lost his vested pension in a currently payable status because the firefighter pension had a retirement age of forty-five where the municipal pension had a retirement age of fifty-five. In *Milici*, Milici was fifty-nine years old and would not have lost a vested pension. *Milici*, 778 A.2d at 1290.

In yet another similar case, *O'Brien v. Workers' Compensation Appeal Board (City of Philadelphia)*, 780 A.2d 829 (Pa. Cmwlth.2001), William O'Brien (O'Brien), a firefighter receiving total disability benefits in addition to a pension in the amount of $20,000 per year, was offered the Dispatcher position which paid $22,386 per year plus a longevity payment of $1225.00 for his previous employment as a firefighter. *O'Brien*, 780 at 830–831. The changes with respect to O'Brien's pension were essentially the same as in the other cases. The WCJ granted the modification petition. The Board affirmed. *O'Brien*, 780 A.2d at 831–832.

This Court determined that the Dispatcher position was available because the Dispatcher position was a unionized position and O'Brien had retired from his firefighter position so that his job security, seniority, and other employment related-union benefits were no longer relevant to his decision whether to accept or refuse the offered position. This Court distinguished O'Brien's situation from Szparagowski's because O'Brien was already fifty-six years old and over the retirement age of a municipal employee. Also, because O'Brien would earn more from the dispatcher position than his pension benefits, and would still receive partial disability along with various fringe benefits, this Court reasoned that he would not suffer a "definable qualitative loss". *O'Brien*, 780 A.2d at 833–834.

■ Here, the normal retirement age under the fire pension plan was forty-five while the normal retirement age under the municipal pension was fifty-five. Claimant testified that he was born on March 22, 1941. Although the WCJ did not find Claimant credible, Dr. Goldberg testified that Claimant was fifty-three years old on the date that he examined him, March 15, 1995, which would be Claimant's age on the date of the examination if he were born on March 22, 1941. Dr. Goldberg Deposition at 11.[7] The WCJ found Dr. Goldberg credible. Employer offered Claimant the job as fire communications dispatcher on August 9, 1995, and he did not accept the position. On August 9, 1995, Claimant was fifty-four years old. Given the reasoning used to distinguish *Szparagowski* from *Milici* and *O'Brien*, Claimant would have suffered a clearly defined qualitative loss because as in *Szparagowski* Claimant would lose the vested pension for a firefighter but would be below the retirement age for a municipal employee. Further, The WCJ found that the fire communications dispatcher position would pay Claimant an annual salary of $21,734.00. Though the WCJ did not find him credible, Claimant testified that his pension was $22,508.00 per year. Employer acknowledged in its brief that

7. Also, Employer acknowledges in its brief that Claimant was born on March 22, 1941.

Claimant earned $22,508.00. Therefore, unlike Milici and O'Brien, Claimant would earn less than his pension if he accepted the position. The Board did not err when it concluded that Employer was not entitled to a modification of Claimant's benefits.

Accordingly, we affirm.

## ORDER

AND NOW, this 20th day of November, 2001, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.