Bernard FARLEY, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.

Commonwealth Court of Pennsylvania.

Submitted Nov. 9, 2001.

March 8, 2002.

**156**

Richard R. DiStefano, Philadelphia, for petitioner.

Joseph A. Prim, Jr., Philadelphia, for respondent.

Before SMITH–RIBNER, J., KELLEY, Senior Judge,[1] and JIULIANTE, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Bernard Farley (Petitioner) petitions for review of the order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge (WCJ) modifying Petitioner's benefits based on his bad faith rejection of employment offered by the City of Philadelphia (Employer). Petitioner raises the following issues: whether Employer may modify workers' compensation benefits after offering Petitioner a position that, if accepted, would have resulted in the loss of a substantial benefit from a pension paid by Employer; and whether Employer may modify workers' compensation benefits for Petitioner where the uncontradicted medical evidence establishes that his occupational lung disease is irreversible and incurable.

On July 23, 1991, Petitioner sustained injuries to his back and right knee, along with lung disease, while working as a firefighter for Employer. Pursuant to a notice of compensation payable, Petitioner received total disability payments of $436 per week. After Petitioner's back and knee injuries had resolved, the parties executed a Supplemental Agreement on June 8, 1993 providing Petitioner with partial disability payments of $436 per week for 500 weeks for his lung problems. On January 10, 1996, Employer informed Petitioner that it had located alternative employment within his capabilities as a fire communications dispatcher (dispatcher) with a start date of January 29, 1996, but Petitioner never reported to work. On June 10, 1996, Employer filed a petition to modify/suspend Petitioner's benefits, as-

---

1. This case was assigned to the opinion writer prior to the date when Judge Kelley assumed the status of senior judge on January 1, 2002.

serting that Petitioner had acted in bad faith by rejecting acceptable alternative employment within his restrictions as a dispatcher.

Employer submitted the deposition testimony of Alan Goldberg, M.D., board-certified in internal, pulmonary and critical care medicine, who examined Petitioner on August 22, 1995. Although Petitioner complained of shortness of breath and intermittent wheezing, Dr. Goldberg testified that Petitioner's lungs were clear, that his breathing was unlabored and that his respiratory rate was normal. In his testimony, Dr. Goldberg also stated that Petitioner's chest x-ray showed no abnormalities and that even though he did not find any evidence of asbestos-related lung disease or obstruction to Petitioner's airflow, he could not rule out the possibility that Petitioner might suffer from restrictive lung disease. After reviewing a description of the dispatcher position, Dr. Goldberg testified that he approved the job for Petitioner, concluding that he could perform the job even if he did suffer from restrictive lung disease.

Employer also submitted the deposition testimony of Molly Mihocko, a vocational counselor, and that of Cynthia Hawthorne, a former assistant personnel officer for Employer's fire department. Mihocko testified that the dispatcher position was sedentary, it did not require any lifting and it was within Dr. Goldberg's restrictions. In addition, Mihocko testified that she sent a letter to Petitioner offering him the dispatcher position beginning on January 29, 1996, but he never reported to the interview or to work. Hawthorne stated that Petitioner would not have to relinquish his current union membership or join the union governing municipal employees, and if Petitioner had accepted the position his pension would be frozen during his time of employment. He would be able to collect the pension upon re-separation from Employer.

Finally, Employer submitted the deposition testimony of James Kidwell, the administrator of Employer's pension program, who testified as to how reemployment would affect existing pension benefits. Kidwell stated that if Employer rehired a fire officer receiving a service-connected pension for a municipal position, the employee's existing pension benefits would be suspended and the employee would be enrolled in the pension program applicable to the municipal position. Kidwell further testified that upon re-separation from Employer, a rehired employee would receive at least the same pension as before and possibly more depending on the amount of time he was enrolled in the new pension plan. If an employee returned to work for another employer, the employee's pension would not be suspended.

Petitioner testified that he receives a gross pension of $26,667.84 and disability benefits of $22,672.00 per year. When Petitioner left the fire department because of his disability, his salary was $785 per week, which totaled $40,820.00 per year. The $49,339.84 he currently receives from his pension and disability benefits is $8,513.42 more than what he received per year as a fire fighter. Petitioner has not been employed since 1993, and he testified that he was not capable of working because his medications made him drowsy. In addition, he experiences shortness of breath and can only sit in the same position for 20 minutes before he must change positions. Petitioner knew that his pension payments would cease if he accepted the fire dispatcher position.

The WCJ found the testimony presented by Employer both persuasive and credible. On the other hand, the WCJ found Petitioner's testimony to be incredible and un-

persuasive as to any alleged inability to perform the dispatcher position and as to any alleged total ongoing disability associated with his lung condition. The WCJ concluded that Petitioner's failure to apply for the position was due to his financial considerations only. The WCJ granted Employer's suspension petition, concluding that Employer had met its burden of proving that the offered position was within Petitioner's physical capabilities and was otherwise available to him. Petitioner appealed to the Board, asserting that the WCJ erred in finding that the position was actually available and that he rejected it in bad faith. He further asserted that the WCJ failed to render a well-reasoned decision. The Board affirmed, determining that the WCJ's findings of fact were supported by substantial competent evidence in the record and that the WCJ adequately explained the reasons for rejecting competent evidence.[2]

█ Petitioner first argues that the dispatcher position was unavailable to him because his pension would be suspended if he accepted the position and the pension is more than the salary that he would earn, amounting to the loss of a substantial benefit. He also argues that because he would not lose his pension if he were to be employed by anyone other than Employer, the good faith standard articulated in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), has not been met.[3] Petitioner relies on *St. Joe's Container Co. v. Workmen's Compensation Appeal Board (Staroschuck)*, 534 Pa. 347, 633 A.2d 128 (1993), and *City of Philadelphia v. Workers' Compensation Appeal Board (Szparagowski)*, 771 A.2d 75 (Pa. Cmwlth.2001), *appeal granted,* 567 Pa. 766, 790 A.2d 1019 (2001), where the alternative positions were held to be unavailable for the purposes of modifying disability benefits. Although he concedes that *Milici v. Workers' Compensation Appeal Board (City of Philadelphia)*, 778 A.2d 1282 (Pa. Cmwlth.2001), *appeal granted,* —— Pa. ——, 793 A.2d 912, (2002), and *O'Brien v. Workers' Compensation Appeal Board (City of Philadelphia )*, 780 A.2d 829 (Pa. Cmwlth.2001), are contrary to his position, Petitioner argues that the cases are distinguishable and are irreconcilable with *Szparagowski* because all three cases were based on Kidwell's testimony but yielded opposite results. Petitioner does not contend that the alternative employment offered by Employer is not within his physical capabilities.

In *St. Joe's* the Pennsylvania Supreme Court examined whether an alternative

---

**2.** This Court's review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

**3.** Under *Kachinski* an employer seeking to modify disability benefits on the basis that the injured employee has recovered the ability to work must produce medical evidence of a change in condition and evidence of a referral to an open position that fits the occupational category for which the injured employee has been given medical clearance. Additionally, the employer must show that the position was "actually available" to the employee in that the referrals were made as a good faith attempt to return the injured employee to the work force, rather than an attempt to avoid paying compensation. *Id.* The burden then shifts to the employee to show that he or she has followed through on the job referrals in good faith, and if the referral fails to result in employment then benefits should continue. *Id.* However, if the employee refuses a valid job, benefits may be modified if it is found that there was no basis to refuse the employment. *Id.*

non-union position within the employee's capabilities was "actually available" under *Kachinski*, where the acceptance of the position required the forfeiture of 36 years of union seniority and associated benefits if the claimant worked in the position for more than six months. The Supreme Court held that the non-union position was "unavailable" to the employee after the first six months of employment because he would suffer a definable qualitative loss, and thus the refusal of the position was reasonable and was not a sufficient basis to modify workers' compensation benefits. Similarly, in *Szparagowski* this Court held that the dispatcher position offered to a retired fire fighter, who was between the ages of 45 and 55, was unavailable because the claimant would have had to sacrifice a vested pension in current payable status with a retirement age of 45 and be enrolled in an unvested pension plan with a retirement age of 55.[4]

The cases of *O'Brien* and *Milici* also involved disabled retired firefighters who were offered unionized dispatcher positions. In both cases, the Court distinguished *St. Joe's* and *Szparagowski*, holding that the alternative employment would not result in the loss of a qualitative benefit to render the positions "unavailable" for the purposes of *Kachinski*. Both *O'Brien* and *Milici* distinguished *Szparagowski* on the basis that the employees were older than the minimum retirement ages for both the municipal and firefighter positions. Therefore the employees would not lose vested pension benefits. Specifically, in *Milici* the Court noted that if the employee were able to return to his prior job, his pension would be suspended during

that time, and, therefore, he would not lose any benefit associated with his former position by accepting the alternative employment. The Court concluded that the only thing that the employee would lose would be the right to collect both a salary and a pension at the same time.

■ The term "disability" is synonymous with the loss of earning power, and the ultimate goal is to make the injured employee whole rather than to place the employee in a better position than before the injury occurred. *O'Brien*; *Milici*. Although Petitioner contends that his situation is more akin to that in *St. Joe's* and *Szparagowski*, the Court disagrees inasmuch as the facts in *Milici* and *O'Brien* are identical to those presented here. Petitioner is 69 years old and well beyond the applicable retirement ages for both the firefighter and municipal pension plans as was the case in *Milici* and *O'Brien*, and the employment offered to Petitioner is a unionized position unlike the situation presented in *St. Joe's*. If the Court permitted Petitioner to refuse a position within his capabilities so that he can collect a retirement pension and workers' compensation benefits, he would be in a better position than he would have been in prior to the injury.

Petitioner also contends that because he suffers from an irreversible occupational disease, Employer must show that the disease is reversible before it may modify or terminate benefits. He argues that the Supreme Court's decision in *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 534 Pa. 327, 632 A.2d 1302 (1993), supports his position and

---

4. *See also City of Philadelphia v. Workers' Compensation Appeal Board (Kos)*, 788 A.2d 1046 (Pa.Cmwlth.2001). The situation in *Kos* also involved a retired firefighter, between the ages of 45 and 55, who would have lost a vested pension in current payable status if he had accepted the dispatcher position. Based on *Szparagowski*, the Court held that the alternative employment was unavailable because the claimant would have suffered a definable qualitative loss in accepting the position.

that this Court's recent decision in *Brooks v. Workers' Compensation Appeal Board (City of Philadelphia)*, 779 A.2d 1261 (Pa. Cmwlth.2001), *appeal denied*, —— Pa. ——, 796 A.2d 319, (2002), improperly applied the rule in *Hebden*. In *Hebden* the employee was awarded disability benefits due to an irreversible occupational disease, and even though the employer did not appeal the decision, it subsequently filed a petition to modify benefits on the basis that the employee did not suffer from the disease. The Supreme Court held that the employer was attempting to relitigate an issue that had already been settled. In *Brooks* this Court concluded that an employer need only prove that it referred the employee to an actually available position within the employee's physical capabilities. The Court noted that the employer did not attempt to terminate benefits on the basis that the employee did not suffer from the disease, but rather it sought to modify benefits because the employee could perform sedentary work.

■ Here, the WCJ found that Employer proved that the dispatcher position was within Petitioner's physical capabilities even if he did suffer from an irreversible lung disease, that the position was actually available to Petitioner and that he failed to accept the position and made himself unavailable for any employment that Employer offered. These findings are supported by substantial evidence in the record. Furthermore, the record supports the WCJ's conclusion that Petitioner failed to meet his burden of proving that his failure to report to the dispatcher position was in good faith. Because no error of law was committed and because the WCJ's findings are supported by substantial evidence, this Court affirms the order of the Board.

***ORDER***

AND NOW, this 8th day of March, 2002, the order of the Workers' Compensation Appeal Board is hereby affirmed.